E-filing

ORIGINAL FILED
AUG - 9 2006
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

Richard A. De Liberty (Cal. Bar No. 203754)
Attorney at Law
3554 Round Barn Boulevard, Suite 204
Santa Rosa, California 95403
tel.: (707) 237-2709
fax: (707) 676-9006
e-mail: richard@deliberty.net

Attorney for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ADR

VICTORIA RYAN,

Plaintiff,

v.

EDITIONS LIMITED WEST, INC.,
a California corporation,
ENVIRONMENTAL GRAPHICS, INC.,
a Minnesota corporation,
MURALS YOUR WAY,
a business organization of unknown form,
LIEBERMAN'S GALLERY, LLP,
a Massachusetts limited liability partnership,
ARTSELECT, INC.,
a Delaware corporation,
CHOOSE ART,
a business organization of unknown form,
BARBARA VOLLMER,
doing business as Wine Country Images, and
DOE ONE through DOE FIFTY.

Defendants.

C06-04812 PVT

**COMPLAINT FOR COPYRIGHT INFRINGEMENT, UNFAIR COMPETITION, BREACH OF CONTRACT, AND SLANDER OF TITLE; DEMAND FOR JURY TRIAL**

## INTRODUCTION

1. This action arises out of Defendants' unauthorized production, distribution, and display of "canvas transfers" and "wallpaper murals" that infringe Plaintiff's copyrights.

2. A "canvas transfer" is an imitation painting produced by transferring a poster's image onto a painter's canvas. Brushstrokes are sometimes added over the poster's image to enhance the impression of a real painting. A canvas transfer is a derivative work of the original poster, and thus cannot legally be produced, distributed, or displayed without prior authorization of the copyright owner.

3. A "wallpaper mural" is a large print of an image that can be applied to a wall or ceiling. A wallpaper mural is a copy of the original image, and thus cannot legally be produced, distributed, or displayed without prior authorization of the copyright owner.

## JURISDITION AND VENUE

4. **Jurisdiction.** The Court has original jurisdiction of this action under 28 U.S.C. §§ 1338(a) & (b), because it arises under Federal copyright law and asserts related claims of unfair competition, and supplemental jurisdiction under 28 U.S.C. § 1367(a).

5. **Intradistrict Assignment.** This is an intellectual property action, and therefore to be assigned to a Courthouse on a district-wide basis pursuant to Civil Local Rule 3-2(c).

6. **Venue.** Venue in the Northern District of California is proper because (a) a substantial part of the events and omissions giving rise to this action occurred in the district; (b) Defendants Editions Limited West and Wine Country Images are located in the district; and (c) Defendants Environmental Graphics, Murals Your Way, and Lieberman's Gallery have contacts within the district sufficient to subject them to personal jurisdiction if the district were a separate State.

## THE PARTIES

7. Plaintiff Victoria Ryan is an individual, and resides in Eureka, California. Ms. Ryan is the author and copyright owner of many artworks in pastel on paper, including:

a. *Vineland: No 1: Brilliant Autumn Vineyard: No. 1,* (Copr. Reg. No. VA-1-332-091);

b. *Vineland: No 2: Brilliant Autumn Vineyard: No. 2,* (Copr. Reg. No. VA-1-332-090);

c. *Slow Journey: Waiting for the Egrets: No. 2* (Copr. Reg. No. VA-1-332-089);

d. *Still Water: Waiting for the Egrets: No. 1* (Copr. Reg. No. VA-1-332-088);

e. *Primavera 1: Palazzo Terrace Garden 1* (Copr. Reg. No. VA-1-335-59); and

f. *Primavera 2: Palazzo Terrace Garden 2* (Copr. Reg. No. VA-1-335-596)

("the Original Pastels"). Ms. Ryan is also the author and copyright owner of posters derived from the Original Pastels, which are published respectively under the titles *Vineland I, Vineland II, Slow Journey, Still Water, Primavera I,* and *Primavera II* ("the Posters").

8. Defendant Editions Limited West ("Editions Limited") is a California corporation, and has its principal place of business in Emeryville, California. Editions Limited publishes and distributes posters derived from paintings and other artworks, and publishes Ms. Ryan's Posters.

9. Defendant Environmental Graphics is a Minnesota corporation, and has its principal place of business in Hopkins, Minnesota. Environmental Graphics produces and distributes wallpaper murals derived from paintings, photographs, and other images.

10. On information and belief, Murals Your Way is a fictitious business name of Environmental Graphics. Murals Your Way produces and distributes wallpaper murals that are made to order. In the event Murals Your Way is a distinct entity, it is joined as a defendant.

11. Lieberman's Gallery ("Lieberman's") is a Massachusetts limited liability partnership, and has its principal place of business in Florence, Massachusetts. Lieberman's is a wholesale distributor of prints and posters, and produces and distributes canvas transfers.

12. ArtSelect is a Delaware corporation, and has its principal place of business in Fairfield, Iowa. ArtSelect is a retailer of prints and posters, and produces and distributes canvas transfers.

13. On information and belief, Choose Art is a fictitious business name of ArtSelect. Choose Art is a retailer of prints and posters, and produces and distributes canvas transfers. In the event Choose Art is a distinct entity, it is joined as a defendant.

14. Defendant Barbara Vollmer ("Wine Country Images") is an individual doing business in Sonoma, California, under the fictitious business name Wine Country Images. Wine Country Images is a retailer of posters and canvas transfers.

15. Plaintiff is ignorant of the true names of Defendants Doe One through Doe Fifty ("Does") or of the specific facts rendering them liable and has therefore designated them using fictitious names.

16. On information and belief, each Defendant willfully and knowingly aided, and operated in concert with, each other Defendant in each act and omission alleged against them in this Complaint.

**AGREEMENTS AND AUTHORITY**

17. Editions Limited publishes and distributes Ms. Ryan's Posters and pays royalties to Ms. Ryan pursuant to a contract dated 19 August 1995 ("the Publication Agreement"). Exhibit A is a true and correct copy of the Agreement.

18. Ms. Ryan never authorized any of Defendants to produce, distribute, or display any canvas transfers, wallpaper murals, or other derivative works of her Original Pastels or Posters.

19. On information and belief, each of Defendants knew or should have known that Ms. Ryan never authorized any of Defendants to produce, distribute, or display any canvas transfers, wallpaper murals, or other derivative works of her Original Pastels or Posters.

20. In the alternative to the allegations of Paragraph 19, on information and belief, each of Defendants other than Editions Limited incorrectly believed that (a) the Original Pastels and Posters were authorized to be used for canvas transfers, wallpaper murals, or other derivative works and (b) no authority was necessary to use the Original Pastels and Posters for canvas transfers, wallpaper murals, or other derivative works. Defendants were negligent in holding those incorrect beliefs.

21. In the alternative to the allegations of Paragraph 19, on information and belief, Editions Limited knew or should have known that the remaining Defendants held those incorrect beliefs, but actively concealed the truth. (The true alternative between the allegations of Paragraph 19 and Paragraphs 20 and 21 may differ for each of Defendants.)

22. On information and belief, Editions Limited encouraged the remaining Defendants to produce, distribute, and display canvas transfers, wallpaper murals, or other derivative works of Ms. Ryan's Original Pastels or Posters.

**UNAUTHORIZED WALLPAPER MURALS**

23. On information and belief, Editions Limited falsely represented to Environmental Graphics, Murals Your Way, and Does ("Mural Producers" or "Mural Producer Defendants") that Ms. Ryan's Posters and Original Pastels were authorized to be used for wallpaper murals.

24. On information and belief, Editions Limited purported to license the Mural Producers to produce, distribute, and display wallpaper murals derived from the Posters and Original Pastels, in consideration for royalties to be paid to Editions Limited ("the Licensing Arrangement").

25. On information and belief, as part of the Licensing Arrangement, Editions Limited made available to the Mural Producers images of the Posters and Original Pastels in digital or other form suitable for use to produce wallpaper murals.

26. On information and belief, the Mural Producers knew or should have known that Editions Limited had no authority to enter into the Licensing Arrangement.

27. On information and belief, Editions Limited supplied images of Ms. Ryan's Posters and Original Pastels to the Mural Producers to be used in connection with offering for sale wallpaper murals derived from the Posters and Original Pastels, and Editions Limited knew or should have known that the images would be used for that purpose.

28. The Mural Producers displayed images of Ms. Ryan's Posters and Original Pastels on the Internet—and, information and belief, in print—in connection with offering for sale wallpaper murals derived from the Posters and Original Pastels, without Ms. Ryan's prior authorization.

29. On information and belief, the Mural Producers produced, distributed, and displayed wallpaper murals derived from the Posters and Original Pastels.

30. On information and belief, the Mural Producers paid royalties to Editions Limited for wallpaper murals produced from the Posters and Original Pastels.

31. On information and belief, Editions Limited received payments, generated goodwill with the Mural Producers, received exposure to the buying public, and benefited in other ways as a result of the Mural Producers' production, distribution, and display of wallpaper murals derived from the Posters

and Original Pastels and display of images in connection with offering for sale wallpaper murals derived from the Posters and Original Pastels.

32. On information and belief, Editions Limited and the Mural Producers actively concealed from Ms. Ryan (a) the existence of the Licensing Arrangement, (b) the production, distribution, and display of wallpaper murals derived from the Posters and Original Pastels, and (c) the resulting payment of royalties to Editions Limited.

**UNAUTHORIZED CANVAS TRANSFERS**

33. On information and belief, Editions Limited falsely represented to Lieberman's Gallery, ArtSelect, Choose Art, Wine Country Images, and Does ("Canvas Transfer Producers" or "Canvas Transfer Producer Defendants") that Ms. Ryan's Posters were authorized to be used for canvas transfers.

34. On information and belief, Editions Limited knew or should have known that (a) the Canvas Transfer Producers produce, distribute, and display canvas transfers, and (b) Posters sold to the Canvas Transfer Producers were likely to be used for canvas transfers.

35. On information and belief, Editions Limited made available to the Canvas Transfer Producers paper and electronic catalogs of posters, including Ms. Ryan's Posters, but did not indicate in those catalogs that the Posters were not authorized to be used for canvas transfers.

36. On information and belief, Editions Limited sold Posters to the Canvas Transfer Producers that were used for canvas transfers, and received compensation for those sales.

37. On information and belief, Editions Limited knew or should have known that the Canvas Transfer Producers purchased the Posters to use for canvas transfers.

38. The Canvas Transfer Producers displayed images of Ms. Ryan's Posters and Original Pastels on the Internet—and, information and belief, in print—in connection with offering for sale canvas transfers derived from the Posters, without Ms. Ryan's prior authorization.

39. On information and belief, Editions Limited supplied images of Ms. Ryan's Posters and Original Pastels to the Canvas Transfer Producers to be used in connection with offering for sale canvas transfers derived from the Posters, and Editions Limited knew or should have known that the images would be used for that purpose.

40. On information and belief, the Canvas Transfer Producers produced, distributed, and displayed canvas transfers derived from the Posters.

41. On information and belief, Editions Limited received payments, generated goodwill with the Canvas Transfer Producers, received exposure to the buying public, and benefited in other ways as a result of the Canvas Transfer Producers' production, sale, and distribution of canvas transfers derived from the Posters and display of images in connection with offering for sale canvas transfers derived from the Posters.

42. On information and belief, Editions Limited and the Canvas Transfer Producers actively concealed from Ms. Ryan the production, distribution, and display of canvas transfers derived from the Posters.

**DEFENDANT'S PERMISSIVE PRACTICES**

43. In industries like Defendants', many businesses follow common practices to avoid direct or contributory copyright infringement, including without limitation:

a. Notifying customers that the business does not copy or manipulate copyrighted images without the permission of the owner;

b. Inspecting submitted images to determine if they may be copyrighted, and establishing review procedures where the status of the image is not immediately clear;

c. Requiring written authorization by the copyright owner before copying or manipulating any copyrighted images; and

d. Educating employees about the practices established to avoid direct or contributory infringement and about their responsibilities under copyright law.

44. On information and belief, Murals and Canvas Transfer Producers have failed to establish and do not follow those common practices or other reasonable practices to avoid direct or contributory copyright infringement.

**EDITIONS LIMITED'S MISREPRESENTATIONS AND CONCEALMENT**

45. In the early part of 2004, Ms. Ryan notified Editions Limited of Internet retailers offering for sale unauthorized canvas transfers of her Posters. Ms. Ryan informed Editions Limited that she objected to the practice and believed it was improper.

46. In response, Editions Limited, speaking through Tom Haile, stated that it was concerned that unauthorized canvas transfers were being offered for sale, and promised to investigate.

47. On information and belief, Editions Limited did not intend to keep its promise to investigate when made, and never did investigate.

48. Editions Limited, speaking through Joanne Chappell, repeatedly stated to Ms. Ryan that Editions Limited maintains a policy against permitting canvas transfers of posters it publishes.

49. On information and belief, Editions Limited has never maintained such a policy and, on the contrary, maintains a policy in favor of permitting canvas transfers of posters it publishes.

50. Editions Limited, speaking through Joanne Chappell, repeatedly promised Ms. Ryan that if she brought to its attention specific companies offering unauthorized canvas transfers of her Posters, it would contact the companies, and request that the practice be stopped.

51. On information and belief, Editions Limited did not intend to keep its promise to contact companies identified by Ms Ryan, and did not contact the identified companies and request the practice be stopped.

52. Editions Limited, speaking through Joanne Chappell, repeatedly represented to Ms. Ryan that as a general matter it had no way to prevent purchasers from using the posters for canvas transfers.

53. Many poster publishers routinely notify purchasers that canvas transfers are unauthorized either in their catalogs or by separate communications. On information and belief, Editions Limited knew or should have known of this practice, and could have implemented a similar practice with little or no effort.

**EDITIONS LIMITED'S IMPROPER ACCOUNTING IN BREACH OF THE AGREEMENT**

54. The Publication Agreement requires Editions Limited to provide a "quarterly statement of sales information comprised of customer account, quantity purchased, and purchase price from which royalty fee is based."

55. Editions Limited's quarterly statements to Ms. Ryan do not indicate the "customer account" or "purchase price" as required by the Publication Agreement.

56. Ms. Ryan has requested that Editions Limited provide to her a list of customers to whom her Posters have been sold, but Edition's Limited has refused to provide the requested information.

**FIRST CLAIM**

**Copyright Infringement**

**(Against All Defendants)**

57. All allegations in this Complaint are incorporated by reference into this First Claim.

58. Plaintiff is the sole and exclusive owner of all copyrights in the Original Pastels and Posters.

59. Plaintiff has registered her copyrights in the Original Pastels and Posters.

60. Defendants produced, distributed, and displayed copies and derivative works of the Posters and Original Pastels without Plaintiff's prior authorization, and thus infringed Plaintiff's copyrights.

61. Defendant Editions Limited knew or should have known of said infringing production, distribution, and display by the Mural and Canvas Transfer Producer Defendants.

62. Defendant Editions Limited materially induced, caused, and contributed to said infringing production, distribution, and display by the Mural and Canvas Transfer Producer Defendants.

63. Defendant Editions Limited had the ability to prevent said infringing production, distribution, and display by the Mural and Canvas Transfer Producer Defendants, but did not.

64. Defendant Editions Limited had a financial interest in said infringing production, distribution, and display by the Mural and Canvas Transfer Producer Defendants.

65. Defendants' infringement of Plaintiff's copyrights was willful.

66. Plaintiff suffered damages proximately caused by Defendants' infringement of Plaintiff's copyrights.

67. On information and belief, Defendants have been unjustly enriched by their infringement of Plaintiff's copyrights.

68. Defendants' infringement of Plaintiff's copyrights continues and will continue unless enjoined, and cause Plaintiff irreparable harm.

## SECOND CLAIM

**Unfair Competitoin**

**(Against Editions Limited)**

69. All allegations in this Complaint are incorporated by reference into this Second Claim.

70. The Mural and Canvas Transfer Producer Defendants publicly offered to produce and distribute copies and derivative works of the Posters and Original Pastels without Plaintiff's prior authorization, and thus engaged in unfair competition.

71. On information and belief, the Mural and Canvas Transfer Producer Defendants failed to establish reasonable practices or follow common practices to avoid direct or contributory copyright infringement, and that failure was intentional in order to increase profits without regard to whether copyrights were infringed, and thus engaged in unfair competition.

72. On information and belief, Defendant Editions Limited maintained a policy in favor of permitting canvas transfers of posters it publishes without regard to whether the copyright owner authorized canvas transfers and promoted that policy by deceptive practices, and thus engaged in unfair competition.

73. Defendant Editions Limited encouraged the remaining Defendants to produce, distribute, and display copies and derivative works of Ms. Ryan's Original Pastels or Posters, and thus engaged in unfair competition.

74. Plaintiff suffered damages proximately caused by Defendants' unfair competition.

75. On information and belief, Defendants have been unjustly enriched by their unfair competition.

76. Defendants' unfair competition continues and will continue unless enjoined, and cause Plaintiff irreparable harm.

**THIRD CLAIM**

**Breach of Contract**

**(Against Editions Limited)**

77. All allegations in this Complaint are incorporated by reference into this Third Claim.

78. The Publication Agreement is a binding contract.

79. Under the Publication Agreement, Defendant Editions Limited has a duty regularly to provide certain information to Plaintiff about the sales of her Posters, including the identities of purchasers.

80. Defendant Editions Limited failed to identify purchasers of the Posters, and thus breached the Publication Agreement.

81. Under the Publication Agreement, Editions Limited has an implied obligation of good faith and fair dealing.

82. Defendant Editions Limited engaged in a pattern of deceptive and unfair practices in connection with Plaintiff's copyrights, and thus breached the contract.

83. Plaintiff suffered damages proximately caused by Defendant Editions Limited's breaches of contract.

**FOURTH CLAIM**

**Slander of Title**

**(Against Editions Limited)**

84. All allegations in this Complaint are incorporated by reference into this Fourth Claim.

85. Plaintiff is the sole and exclusive owner of all copyrights in the Original Pastels and Posters.

86. On information and belief, Defendant Editions Limited has represented that it owns, has license to, or has authority regarding the rights to produce, distribute, or display canvas transfers, wallpaper murals, or other copies or derivative works of Plaintiff's Original Pastels or Posters.

87. Said representations were false.

88. Defendant Editions Limited knew said representations were false or recklessly disregarded whether said representations they were false.

89. Plaintiff suffered damages proximately caused by Defendant Editions Limited's slander of title, including impairment of the value of Plaintiff's copyrights and the expense of litigation and other measures to remediate and mitigate the damages caused by Editions Limited's slander of title.

90. On information and belief, Defendant Editions Limited is guilty of oppression, fraud, and malice in committing the acts and omissions alleged in this Fourth Claim.

91. On information and belief, Defendant Editions Limited has been unjustly enriched by its slander of title.

92. Defendant Editions Limited' slander of title continues and will continue unless enjoined, and cause Plaintiff irreparable harm.

**PRAYER**

WHEREFORE, Plaintiff demands judgment against Defendants for:

(1) An injunction enjoining Defendants, their agents, assigns, and all those acting in concert with them during this action and permanently from:

(a) Infringing Plaintiff's copyrights in any manner;

(b) Producing, selling, marketing, or otherwise disposing of any wallpaper murals, canvas transfers, or other copies or derivative works of Plaintiff's Posters or Original Pastels, but not including the original authorized Posters or images of the Posters to be displayed in connection with marketing the original authorized Posters; and

(c) Selling, marketing, or otherwise disposing of the original authorized Posters without informing the recipient of the Posters or marketing materials that the Posters are not authorized to be used for wallpaper murals, canvas transfers, or other derivative works;

(d) Selling, marketing, or otherwise disposing of the original authorized Posters when there is reason to suspect the recipient will use the Posters for wallpaper murals, canvas transfers, or other derivative works or market the Posters to be used for wallpaper murals, canvas transfers, or other derivative works without first taking reasonable precautions to prevent the recipient from such unauthorized uses;

(2) An order that Defendants shall deliver up to be impounded during this action all wallpaper murals, canvas transfers, or other copies or derivative works of Plaintiff's Posters or Original Pastels in Defendants' possession or control, but not including the original authorized Posters or images of the Posters to be displayed in connection with marketing the original authorized Posters;

(3) An order that Defendants shall institute and follow practices reasonably designed to avoid direct or contributory copyright infringement, which shall include:

(a) Notifying customers that the Defendant's business does not copy or manipulate copyrighted images without the permission of the owner;

(b) Inspecting submitted images to determine if they may be copyrighted, and establishing review procedures where the status of the image is not immediately clear;

(c) Requiring written authorization by the copyright owner before copying or manipulating any copyrighted images; and

(d) Educating employees about the practices established to avoid direct or contributory infringement and about their responsibilities under copyright law;

(4) An accounting by Defendants for all gains, profits, and advantages attributable to their unfair competition;

(5) Either:

(a) An accounting by Defendants for all gains, profits, and advantages attributable to the infringement of Plaintiff's copyrights, or

(b) Damages against Defendants pursuant to Section 504 of the Copyright Act;

(6) Damages against Defendants for infringement of Plaintiff's copyrights and unfair competition;

(7) Damages against Defendant Editions Limited for breach of contract and slander of title;

(8) Attorneys fees and costs against Defendants pursuant to Section 505 of the Copyright Act;

(9) Attorneys fees and costs against Defendant Editions Limited pursuant to the Publication Agreement;

(10) Exemplary damages against Defendants; and

(11) Costs of suit and such further relief as the Court deems just and proper.

DATED: 8 August 2006

Richard A. De Liberty
Attorney for Plaintiff

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all issues triable of right by a jury.

DATED: 8 August 2006

Richard A. De Liberty
Attorney for Plaintiff

**EXHIBIT A**

**AGREEMENT**

THIS AGREEMENT, by and between EDITIONS LIMITED WEST, INC., having its principal place of business at 625 Second Street, Suite 400, San Francisco, California 94107 represented by MICHAEL OGURA (hereinafter referred to as "Publisher") and VICTORIA RYAN, an individual residing at 1715 Freeport Court, Oakley, California, 94561 (hereinafter referred to as "Artist") and is made with reference to the following facts:

WHEREAS, Artist has created two original paintings which have been entitled "Lucid Dream I" and "Lucid Dream II" each of which are to be reproduced as posters (each hereinafter referred to as "Poster Edition"); and

WHEREAS, Publisher desires to obtain the right to exclusively publish and have the exclusive right to sell each Poster Edition; and

WHEREAS, Publisher and Artist have reached agreement whereby Publisher shall obtain the exclusive right to publish and the exclusive right to sell each Poster Edition, the parties hereto desiring to reduce their agreement to writing.

NOW, THEREFORE, in consideration of the mutual covenants and conditions contained herein, the adequacy of which is hereby acknowledged, the parties hereto mutually agree as follows:

1. (a) Artist hereby grants to Publisher the exclusive worldwide rights to publish and distribute as well the exclusive worldwide right to sell each Poster Edition worldwide in accordance with the terms and conditions hereof.

(b) Subject to the payment provisions set forth in Paragraph 2 hereof, the number of copies of each Poster Edition which Publisher may print, publish, distribute and sell shall be without limit and shall be at the sole discretion of Publisher.

(c) The term of this Agreement shall be effective for a period of eight (8) years from the date hereof. This Agreement shall automatically be extended in one (1) year increments unless the Agreement has been terminated by either party for cause pursuant to the provisions of the Agreement or, if Artist or Publisher has provided six (6) month notice with just cause prior to the termination of their desire to not renew the Agreement.

2. In exchange for the rights granted by Artist to Publish pursuant to Paragraph 1 hereof, Publisher shall compensate Artist as follows:

(a) Artist shall receive a royalty fee of ten percent (10.0%) of Publisher's sales price for each copy of each Poster Edition sold by Publisher, said amount to be paid within 30days after each calendar quarter (Jan. - Mar. paid by April 30, Apr.-

Jun. paid by July 30, Jul.-Sept. paid by Oct. 30, Oct.-Dec. paid by Jan 30). Artist shall be furnished with a corresponding quarterly statement of sales information comprised of customer account, quantity purchased, and purchase price from which royalty fee is based. Artist shall receive Two Hundred and Fifty Dollars ($250.00) per Poster Edition as an advance fee to be applied against the aforementioned royalty fee, said amount to be paid within thirty (30) days after completion of print run.

(b)     Artist shall receive twenty five (25) copies of each Poster Edition from the first print run at no cost from Publisher. Artist may purchase additional copies of each Poster Edition from Publisher at Publishers cost of production.

3.     Artist also grants Publisher the exclusive right to publish and distribute as well as the exclusive right to sell each Poster Edition image as a "small print." A small print may range in size from 5" x 7" to 11" x 14".

(a)     The number of copies of small prints which Publisher may print, publish and sell shall be without limit and shall be at the discretion of Publisher.

(b)     Neither Poster Edition shall be reproduced as a poster by any other person or entity other than Publisher, including Artist or any other person or entity claiming rights to each Poster Edition by way of assignment, sale or any other manner of transfer.

(c)     Artist shall receive a royalty fee of ten percent (10.0%) of Publisher's sales price for each copy of each small print sold by Publisher, said amount to be paid within 30days after each calendar quarter (Jan. - Mar. paid by April 30, Apr.-Jun. paid by July 30, Jul.-Sept. paid by Oct. 30, Oct.-Dec. paid by Jan 30). Artist shall be furnished with a corresponding quarterly statement of sales information comprised of customer account, quantity purchased, and purchase price from which royalty fee is based.

4.     Artist hereby warrants and represents as follows:

(a)     The original artwork for each Poster Edition has been created by Artist and is original with her and, to Artist's knowledge, is not substantially similar to any other work of art.

(b)     During the term of this Agreement, Artist shall not grant any poster, or any photo mechanical reproduction publishing rights with respect to each Poster Edition for the purpose of publishing same as Poster Editions

(c)     For a period of eighteen (18) months from the date hereof, Artist shall neither authorize nor allow any works produced by her to be published as posters by anyone other than Publisher.

5.      Artist and Publisher hereby agree that they shall cooperate fully with each other for the purpose of producing the final version of each Poster Edition which is to be printed, published, distributed and sold by Publisher. Notwithstanding anything herein to the contrary, Publisher shall have the final approval with respect to the final version of each Poster Edition which is to be printed, published, distributed and sold by Publisher.

6.      Publisher may publish a maximum of eight (8) additional posters created by Artist. For each additional single poster edition published by the Publisher, Publisher shall compensate as follows:

(a)      Artist shall receive a royalty fee of ten percent (10.0%) of Publisher's sales price for each copy of each poster sold by Publisher, said amount to be paid within 30days after each calendar quarter (Jan. - Mar. paid by April 30, Apr.-Jun. paid by July 30, Jul.-Sept. paid by Oct. 30, Oct.-Dec. paid by Jan 30). Artist shall be furnished with a corresponding quarterly statement of sales information comprised of customer account, quantity purchased, and purchase price from which royalty fee is based. Artist shall receive Two Hundred and Fifty Dollars ($250.00) per poster edition as an advance to be applied against the aforementioned royalty fee, said amount to be paid within thirty (30) days after completion of print run.

(b)      Artist shall receive twenty five (25) copies of each poster edition from the first print run at no cost from Publisher. Artist may purchase additional copies of each poster from Publisher at Publishers cost of production.

7.      Artist also grants Publisher the exclusive right to publish and distribute as well as the exclusive right to sell each poster image as a "small print." A small print may range in size from 5" x 7" to 11" x 14".

(a)      The number of copies of copies of small prints which Publisher may print, publish and sell shall be without limit and shall be at the discretion of Publisher.

(b)      Artist shall receive a royalty fee of ten percent (10.0%) of Publisher's sales price for each copy of each small print sold by Publisher, said amount to be paid within 30days after each calendar quarter (Jan. - Mar. paid by April 30, Apr.-Jun. paid by July 30, Jul.-Sept. paid by Oct. 30, Oct.-Dec. paid by Jan 30). Artist shall be furnished with a corresponding quarterly statement of sales information comprised of customer account, quantity purchased, and purchase price from which royalty fee is based.

8.      This Agreement shall constitute the entire agreement between the parties hereto concerning the subject matter hereof; this Agreement shall supersede all previous negotiations, commitments, and writings, it shall not be modified or altered in any way except by an instrument in writing executed by both parties hereto; the failure of any party hereto enforce at any time the provisions of this Agreement shall in no way be construed to be a waiver of such provision, nor in any way to affect the validity of this Agreement, or any part hereof, or the right of any party to thereafter enforce each and every such

provision; no waiver of any breach of this Agreement shall be held to be a waiver of any other subsequent breach. All remedies afforded in this Agreement shall be taken and construed as cumulative, namely, in addition to every other remedy provided herein by law.

9. All notices, correspondence, payments, etc., required or permitted to be given under this Agreement shall be in writing and shall be deemed to be properly given if sent by certified or registered mail to the party entitled to receive such notice, at the address herein below set forth or in accordance with the last mailing address to be used for such notices; the date of the notice shall be the date of the postmark if the same shall be sent by certified or registered mail.

"Publisher"

Michael Ogura
Editions Limited West, Inc.
625 Second Street, Suite 400
San Francisco, CA 94107

"Artist"

Victoria Ryan
1715 Freeport Court
Oakley, CA, 94561

10. Counterparts of this Agreement may be executed for the convenience of the parties and each counterpart shall be deemed to be an original instrument.

11. The counterparts of this Agreement have been executed in the State of California and the parties agree that the Agreement shall be construed in accordance with the laws of the State of California.

12. In the event that litigation is instituted with regard to this Agreement, the prevailing party shall be entitled to its costs of the suit, including reasonable attorney's fees.

THE PARTIES hereto have signed this Agreement on the Date set forth below.

Dated: 8/16/95 By: [signature]
Michael Ogura

Dated: 8/19/95 By: [signature]
Victoria Ryan