| | |
|---|---|
| VICTORIA RYAN,<br><br>           Plaintiff,<br><br>     v.<br><br>EDITIONS LIMITED WEST, INC. ET AL,<br><br>           Defendants. | Case No.: C- 06-4812   PVT<br><br>**ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT AND REQUIRING SETTLEMENT CONFERENCE** |

## I.    INTRODUCTION AND PROCEDURAL POSTURE

Plaintiff Victoria Ryan ("Ryan") is an artist working in pastel on paper.[1]  Defendant Editions Limited West ("Editions") is her publisher and authorized to publish certain of Ryan's works as posters.  Defendant ArtSelect, Inc. "ArtSelect" is a retailer of artwork.  Ryan claims that Editions authorized and encouraged  retailers to sell reproductions not provided for in their contract.  The case  involves reproductions in the form of canvas transfers, a process by which the ink is lifted off a paper poster and applied to a canvas; wall murals, large prints that can be applied to a wall or ceiling; and giclees or canvas prints, ink applied directly to canvas.

There are four claims in the Complaint: 1) Copyright infringement against Editions and

---

[1]    The holding of this court is limited to the facts and the particular circumstances underlying the present motion.

ArtSelect and Contributory Infringement against Editions; 2) Unfair Competition against ArtSelect for making unauthorized canvas transfers and against Editions, by encouraging ArtSelect to engage in copyright infringement; 3) Breach of contract against Editions, by failing to identify purchasers of the posters and engaging "in a pattern of deceptive and unfair practices in connection with Plaintiff's copyrights." (Comp. p. 11 l. 11-16); and 4) Slander of Title against Editions, by falsely representing that it has authority to produce canvas transfers, wallpaper murals, or other derivative works.

Editions counterclaimed that Ryan defamed it by telling other artists that Editions is cheating her. Ryan filed an Anti-Slapp motion to dismiss the counterclaim. In December of 2006, this Court denied the motion, finding that Editions was entitled to take discovery to support the claim. Ryan appealed and has blocked Editions' attempts to dismiss the counterclaim. Also in December of 2006, the Court issued a Case Management Conference Order setting the deadline for completion of fact discovery on May 18, 2007.

On May 18, 2007, the day of the discovery cut-off, Plaintiff filed a motion to set a case management conference and a motion to amend the CMC Order. The Court initially denied the request to extend the discovery cut-off. In July, the Court granted Ryan's renewed request for additional time to take discovery.[2] The Court extended discovery to August 3, 2007 and extended the pretrial conference and trial dates. In September, Defendants sought, and were granted, leave to file the instant motion for partial summary judgment.

The Motion was noticed for hearing on October 30, 2007, making the Opposition due October 9, 2007 and the Reply due on October 16, 2007. Counsel for Ryan, Mr. DeLiberty ("DeLiberty"), filed his opposition at 10:23 pm on October 10, 2007. DeLiberty has not

---

[2]    The pretrial schedule may be modified "if it cannot reasonably be met despite the diligence of the party seeking the extension." *Zivkovic v. Southern California Edison Co.,* 302 F.3d 1080, 1087 (9th Cir. 2002) (citation omitted.) Ryan did not propound any discovery until she sent out a single request for production of documents a mere three months prior to the close of discovery. Ryan then waited until the day before the close of discovery to send her first meet and confer letter. Ryan's counsel, Mr. DeLiberty, asserted that his other cases precluded him from propounding the discovery he needed in this case. Counsel's busy schedule does not excuse a lack of diligence. *Blue v. Grannis,* 2007 WL 125408 at * 1 (E.D.Cal. Jan 18, 2007). Despite the lack of showing of diligence, the Court granted the request in order to give Ryan every chance to find evidence to support her claims.

provided any explanation for his failure to timely file the Opposition. Defendants asked the Court not to consider the Opposition. Despite DeLiberty's lack of explanation for his failure to timely file the Opposition, the Court has considered the brief. On November 30, 2007, the Court issued a Tentative Order Granting the Motion for Partial Summary Judgment and requiring further briefing on the issue of whether attorneys' fees could be the sole damages supporting a claim for Slander of Title. After considering all of the briefs, and for the following reasons, the Court Grants the Motion for Partial Summary Judgment.

## II.    LEGAL STANDARDS

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ. P. 56(c )  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). However, the moving party has no burden to negate or disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only point out to the court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325. The burden then shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324 (quoting Rule 56(e)).

To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Evidence that "is merely colorable, or is not significantly probative," is not sufficient to avoid summary judgment. *Id.* at 249-250. Similarly, the non-moving party "may not merely state that it will discredit the moving party's evidence at trial and proceed in the hope that something can be developed at trial in the way of evidence to support its claim." *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

Summary judgment cannot be granted where a genuine dispute exists as to any material fact. Fed. R. Civ. P. 56(c). A "material" fact is one which might affect the outcome of the case under the applicable law. *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine if a reasonable jury could return a verdict for the non-moving party. *Id.* In deciding a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party, and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge [when] he is ruling on a motion for summary judgment." *Id.*; *see also Harris v. Itzhaki*, 183 F.3d 1051 (9th Cir. 1999).

## III. FACTS

In 1995 Ryan and Editions entered into a written contact in which Ryan granted Editions the exclusive right to publish certain of Ryan's paintings as posters. (Jakola Decl. Exh. 1.) The contract only refers to posters and is silent as to canvas transfers, giclees, and wall murals. Ryan has never authorized anyone to do canvas transfers, canvas prints (giclees) or wall murals. (Ryan Decl. 2.) The contract provides for attorney's fees for the prevailing party in any suit "with regard" to the contract. (*Id*. at ¶12 ).

In 2000, Joanne Chappell and Christy Carlton of Editions approached Ryan about marketing giclees of her works. (Ryan Decl. ¶3.) Ryan declined, in part because, at the time, she had her own business selling giclees. (*Id.*) Ryan asserts that Editions was on notice since 2000 that it was not allowed to license her artwork for giclees "or any other purpose." (Id.) There is no evidence, however, that Ryan ever mentioned canvas transfer or wall murals.

In 2004, Ryan noticed "at least one" internet retailer, Lemaze Studio, offering canvas transfers of her posters. (Ryan Decl. ¶ 4.) She complained to Todd Haile of Editions and he replied that he was concerned and would check it out. (*Id.*) Ryan asserts that she "objected to the practice and believed it was improper." (Opp. at 2:23.) As proof, Ryan cites an email she sent to Haile on November 9, 2004. That email, however, does not entirely support her argument. It states:

> I have been learning more about 'canvas transfers' and *wonder what you think*

about the ethics of utilizing this method to market posters.  I wonder if there is a legal or copyright issue here.  I know of several companies that use this technology on my posters and others and it just doesn't sit too well to think that a new product is being made and no compensation is rendered to the artist.  *I'm curious to know your opinion on this issue.*

(Haile Depo. Exh. 7)(emphasis added).

Thus, the email merely solicits an opinion as to the ethics and legality of canvas transfers.  Nonetheless, as the party opposing summary judgment, Ryan is entitled to all reasonable inferences, and it is reasonable to infer that Editions knew or should have known that there was an issue regarding Ryan's consent to canvas transfers.

Ryan then contacted Editions.  Editions stated that it did not authorize any canvas transfers, but it could not prevent all purchasers from making canvas transfers.  Editions offered to contact any business that Ryan found making canvas transfers and write to them telling them to stop.  (Ryan Decl.  ¶ 8.)  Ryan declined to tell Editions the names of any businesses because it "would be a huge endeavor."  (*Id.*)  Editions maintained a policy in its catalog prohibiting the posters it sells to be used for canvas transfers.  (Haile Depo Tr.  at 118).

In May of 2005, Editions provided ArtSelect with a list of Editions artists whose works were approved for canvas transfers and Ryan's name was on the list.  (Jakola Decl ¶ 3, Exh.  2.)  A canvas transfer is a remounting of a paper poster onto canvas, destroying the paper poster in the process.  (Haile Decl.  ¶ 2.)  In April of 2005, Editions provided ArtSelect with a list of works that ArtSelect could print as giclees.  (Jakola Decl.  ¶4, Exh.3.)  A giclee is created by applying ink directly to canvas.  (Haile Decl.  ¶ 2.)  The list included four of Ryan's artworks.  In June of 2005, Editions entered into a license agreement with Environmental Graphics, allowing Environmental Graphics to print art images as wall murals.  The list of art images included six Ryan works.  (Jakola Decl. ¶ 5, Exh.  4.)

On June 9, 2005, Ryan called Editions, stating her disapproval of any of her artwork being approved for any canvas treatments.  (Jakola Decl.  ¶ 6).  That same day, Editions sent Artselect an email deleting Ryan from the list of artists approved for canvas treatment and Artselect responded that it had removed Ryan from their canvas lines.  (*Id.*, Exh.  5, Reeder Decl.  ¶ 5.)  Prior to being notified that Ryan's works were not approved for canvas transfers, Artselect

sold one canvas transfer of a poster of an artwork entitled "Primavera I." The work was sold on May 27, 2005 for $98.96, but returned for a full refund. (Reeder Decl. ¶ 6; Exh. 6.) On July 26, 2005, the canvas transfer was resold through the ArtSelect outlet for $51.69. ArtSelect's costs totalled $49.97, resulting in a profit of $1.72. (Exh. 6.) Artselect did not sell any giclees of Ryan works. (Reeder Decl. ¶ 5.) Editions has never sold any canvas transfers; it sells only paper posters. (Jakola Decl. ¶ 7.)

In "late" 2005, Ryan discovered that Environmental Graphics was offering wallpaper murals of her posters for sale. (Ryan Decl. ¶ 9.) Ryan argues: "By this time, hundreds of Internet sites were offering unauthorized canvas transfers of Ms. Ryan's posters for sale. Wal-Mart and other brick-and-mortar retailers had also begun selling unauthorized canvas transfers of her posters." (Opp. at 3:10-12.) There is no citation of authority for this proposition. In fact, the closest "evidence" is Ryan's declaration, which states "I continued to see more and more new companies offering canvas transfers of my work." (Ryan Decl. ¶ 9.) Ryan offered no evidence as to "hundreds" of internet sites and no evidence as to any product offered for sale by Wal-Mart.

On December 13, 2005, counsel for Ryan sent Editions a letter demanding that Editions: 1) cease and desist from allowing derivative works; 2) produce documents

relating to sales of Ryan works and 3) produce documents relating to permission for derivative works of any Editions' Artist. (Jakola Decl. Exh. 8.)[3] No later than receipt of the letter, Editions informed Environmental Graphics that Ryan's works were not approved for wall murals. Environmental Graphics never sold any wall murals of Ryan works. (Jakola Decl. ¶ 7.)

On December 19, 2005, Editions responded to the cease and desist letter. (DeLiberty Decl. Exh. B.) Editions stated that it "does not manufacture, sell or condone the manufacture and sale of canvas transfers." (*Id.* at 1.) Editions also stated that it "denies that it in any way induces, causes or materially contributes to" any canvas transfers. (*Id.* at 2.) Editions stated that it had no duty to investigate what uses purchasers made of posters, but that it "will certainly

---

[3]Although dated December 13, 2005, the letter demanded the documents be produced no later than December 12, 2005.

put any purchaser on notice of Ms. Ryan's concern if and when it determines that canvas transfers are, in fact, being manufactured." (*Id.*)

In January of 2006, Ryan sent cease and desist letters to "a number of retailers" (Opp. at 3). Ryan provides only one such notice, to ArtSelect (DeLiberty Decl. Exh. D.) ArtSelect responded that it had never sold any canvas transfers. (*Id.*, Exh. E.) Ryan argues that ArtSelect claimed it had permission from Editions to sell canvas transfers, but refused to produce any evidence. The letter, however, merely states that ArtSelect never sold any canvas transfers.

## IV. DISCUSSION

### A. No Genuine Dispute as to Amount of Copyright Damages Available

Ryan has sued Defendant ArtSelect for Copyright Infringement and Defendant Editions for Contributory Infringement. In order to show contributory infringement, Ryan must show Editions "(1) has knowledge of a third party's infringing activity, and (2) induces, causes, or materially contributes to the infringing conduct." *Perfect 10, Inc. v. Visa Intern. Service Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007), *quoting Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir.2004). Thus, mere knowledge is insufficient to show contributory infringement because Ryan must also show a "material contribution." *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir.2004) ("A defendant is vicariously liable for copyright infringement if he enjoys a direct financial benefit from another's infringing activity and 'has the right and ability to supervise' the infringing activity.) (citation omitted.)

Rule 56 provides that the court shall "make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy." Fed. R. Civ. P. 56 (d). Defendants moved for a determination that the amount of damages, if Ryan can prove copyright infringement, is $1.72.

The Copyright Act, 17 U.S.C. § 504(a) provides for two types of damages: actual damages and profits of the infringer under §504(a)(1) and statutory damages under §504(a)(2). As described below, Defendants have shown that there is no genuine dispute that actual profits were only $1.72 and that statutory damages and attorney's fees are not available.

//

1.     <u>Actual Damages/Profits</u>

Section 504 provides:

> The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages.  In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work.

17 U.S.C. § 504(b).

In the record, there is only evidence of a single instance of alleged infringement, the canvas transfer sold by ArtSelect.  At the hearing, Ryan argued that she did not agree that there was only one instance and she was still investigating to find evidence of additional instances of infringement.  (October 30, 2007 Hearing Transcript ("Tr.") at 15-16.)  Ryan however, admitted that she did not have any such evidence: "So the question is, okay, well, do we have specific – Do I have specific Invoices, very specific invoices, specific – specific instances of sales that I can document and trace back?  Right now I don't have it."  (Tr.  at 18:12-15.)  Instead, Ryan asserted that she could put on circumstantial evidence that, because of  Editions' permissive policies towards infringement, there "must have been a lot" of infringing products produced. When asked by the Court whether that would get him past summary judgment, he replied "No. Well, I think it should get me past the summary judgment motion because there is no evidence that I can't prove that."  (Tr.  at 19:18-21.)  Ryan  argued that IF she produces additional evidence of damages at trial, it would be "unfair to reduce those damages based on Defendant's prior prediction."  (Opp.  at 8.)

Ryan  misunderstands the nature of summary judgment.  Summary judgment cannot be defeated by the hope of discovering evidence later.  *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  The limitation is not based on a prior prediction, but rather on the evidence in the record at summary judgment.  What Mr.  DeLiberty thinks he could put on at trial is not sufficient to defeat summary judgment.  Similarly, Defendants need not prove that DeLiberty cannot provide evidence at trial.  Defendants meet their burden by pointing out the absence of evidence necessary to support Plaintiffs' case.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Ryan also argued that she had evidence that Defendant ArtSelect had done an additional canvas transfer. In her declaration, Ryan asserts:

> I contacted the company and was told that they had permission from Editions Limited to produce canvas transfers from certain images and in fact were provided with a list of images and artists that they had permission to use and that my pieces were on that list. She stated that ArtSelect had sold at least one of my images as canvas transfers.

(Ryan Decl. ¶ 7.) Defendants object to this paragraph because it is hearsay. Hearsay is not admissible in evidence and cannot be used to defeat summary judgment. Fed. R. Evid. 802; Fed. R. Civ. P. 56(e); *Toensing v. Brown*, 374 F.Supp. 191, 205 (N.D.Cal. 1974), *aff'd* 528 F.2d 69 (9th Cir. 1975). The Federal Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Ryan offers this statement of an unnamed ArtSelect employee as evidence that ArtSelect sold a canvas transfer of Ryan's work in 2004. Thus, this statement is hearsay; it is offered to prove the truth of the matter asserted, that ArtSelect sold the canvas transfer. Ryan did not address why this hearsay statement should be admitted.

A statement is not hearsay if it is an admission by a party opponent. Fed. R. Evid. 801(d)(2). The proffering party must lay a foundation to show that an otherwise excludible statement relates to a matter within the scope of the agent's employment. *Breneman v. Kennecott Corp.*, 799 F.2d 470, 473 (9th Cir.1986). As Defendants correctly assert, Ryan has not provided any foundation as to the type of communication, the name of the person, the person's job responsibilities or whether the statement was within the job responsibilities. Accordingly, Ryan has failed to show that this statement is not hearsay and the statement is, therefore, not admissible.

Ryan also asserts that "[m]any other retailers have produced canvas transfers" of her works." (Opp. at 7.) Ryan, however, has not produced any evidence of any infringing sales. Ryan asserts that Barbara Vollmer of Wine Country Images told her that she had been marketing Ryan works as canvas transfers. (Ryan Decl. ¶ 6.) This statement, however, is hearsay and not

admissible.  Ryan also asserts that Wine Country Images was offering canvas transfers of her

works at the end of 2004.  (*Id.*)  The offering of a canvas transfer is not evidence that a canvas

transfer was produced and sold.[4]

Ryan also assets:

> A number of potential customers have stated to me that they have purchased
> canvas transfers of my posters from various sources.  For example, recently, a
> couple who collect art approached me at an art fair interested in buying some
> prints.  They said they purchased a canvas print from a store in the area a few
> years earlier for about $400.  The were interested in an original pastel that I was
> offering for sale, but decided against buying it because they felt it was too much
> like the canvas print they had purchased.

(Ryan Decl. ¶ 10.)  Ryan's repetition of statements made out of court by various customers is

inadmissible hearsay.  Accordingly, these statements cannot be considered by the Court.

Thus, the question is the damages or profits from that one sale.  Editions made no profit

on the canvas transfer, only on the sale of the poster.[5]  (Jakola Decl. ¶ 8.) ArtSelect has

submitted sufficient evidence to show that the costs were $49.97 and the sale price was $51.69

and its profits were $1.72.  (Reeder Decl. ¶ 7).  Ryan has produced no evidence to dispute these

numbers.  At the hearing, DeLiberty argued that he did not have to accept Defendants' figures.

(Tr.  at 26.)  A Plaintiff need not accept a Defendants' assertion.  A Plaintiff may produce

evidence that creates a genuine dispute as to the amount of profits.  Ryan, however, has not

produced any evidence that creates a genuine dispute as to the amount of profits.  Accordingly,

the Court must accept that $1.72 is the profit from the sale of the single canvas transfer.

2.     Statutory Bar from Recovering Statutory Damages or Attorneys' Fees

Section 504(c) provides for damages "with respect to any one work, for which any one

infringer is liable individually, or for which any two or more infringers are liable jointly and

severally, in a sum of not less than $750 or more than $30,000 as the court considers just." 17

---

[4]Ms.  Vollmer was a defendant in this lawsuit.  On November 15, 2006, Ryan voluntarily
dismissed Ms.  Vollmer.  If Ryan had evidence that Ms.  Vollmer had sold canvas transfers, she
should have submitted that evidence in opposition to this motion.

[5]Editions has paid Ryan the ten percent royalty on every Ryan poster it has sold, including the
poster consumed to make the canvas transfer.   (Jakola Decl at ¶ 2.)  Ryan has not produced any
evidence that Editions has not paid all royalties due on poster sales.

U.S.C. § 504(c). The court may, in its discretion increase the award to $150,000 for willful

infringement or decrease the award to $200 if it finds the defendant has proven he was not

aware, and had no reason to believe, that his acts constituted infringement. However, the statute

limits a Plaintiff's ability to recover either statutory damages or attorneys' fees:

> no award of statutory damages or of attorney's fees, as provided by sections 504
> and 505, shall be made for–
> . . .
>> (2) any infringement of copyright commenced after first publication of the
>> work and before the effective date of its registration, unless such
>> registration is made within three months after the first publication of the
>> work.

17 U.S.C. § 412(2).

In this case, the only evidence of an infringing sale is that of a work called "Primavera I"

sold by ArtSelect in May of 2005, and re-sold on July 26, 2005. (Reeder Decl. ¶ 6; Exh. 6.)

Primavera I was registered on October 28, 2005 and the registration states a first publication date

of January 1, 2005. (Woods Exh. 9.) Thus, any infringement occurred after first publication

and more than three months prior to registration.

Ryan asserts that she does not seek statutory fees or damages for any pre-registration

infringement. Ryan then argues: "If Plaintiff shows post-registration infringement, however, she

should have the option to recover statutory fees and damages." (Opp. at 8.) As discussed above,

the mere hope of finding additional evidence cannot defeat summary judgment. *TW elec. Serv.

Inc.*, 809 F.2d at 630. Accordingly, statutory damages and attorneys fees are not available.

### B.     No Evidence of Contract Damages

The elements of a cause of action for breach of contract are: "(1) The contract; (2)

Plaintiff's performance; (3) Defendant's breach; (4) Damage to plaintiff." *McDonald v. John P.

Scripps Newspaper*, 210 Cal.App.3d 100, 104 (1989), *quoting* Witkin, California Procedure,

Pleading, § 464 (3rd Ed. 1985). In order to state a claim for breach of contract based on a

defendant's conduct, a plaintiff must identify a term of the contract prohibiting that conduct.

*Anthony v. Yahoo Inc.*, 421 F.Supp.2d 1257, 1260-61 (N.D. Cal. 2006).

Ryan may also intend to assert a breach of the implied covenant of good faith and fair

dealing.

> There is implied in every contract a covenant by each party not to do anything which will deprive the other parties thereto of the benefits of the contract. This covenant not only imposes upon each contracting party the duty to refrain from doing anything which would render performance of the contract impossible by any act of his own, but also the duty to do everything that the contract presupposes that he will do to accomplish its purpose.

*Floystrup v. City of Berkeley Rent Stabilization Bd.*, 219 Cal.App.3d 1309, 1318 (1990) (citation omitted), *quoting Harm v. Frasher* 181 Cal.App.2d 405, 417 (1960). In order to prove a breach of the implied covenant, Ryan will have to show that Editions deprived her of the benefit of the contract; i.e. to be paid royalties on poster sales.

"Causation of damages in contract cases . . . requires that the damages be proximately caused by the defendant's breach, and that their causal occurrence be at least reasonably certain." *Vu v. California Commerce Club, Inc.*, 58 Cal.App.4th 229, 233 (1997), *citing* Cal Civ.Code, §§ 3300, 3301. There is a "fundamental rule that damages which are speculative, remote, imaginary, contingent, or merely possible cannot serve as a legal basis for recovery." *Goehring v. Chapman University*, 121 Cal.App.4th 353, 367 (2004) *quoting Frustuck v. City of Fairfax* 212 Cal.App.2d 345, 367-368 (1963).

Defendants move for summary judgment, asserting that Ryan has put forth no evidence of contract damages. Defendants' motion is narrowly targeted. Defendants accept, for the purpose of this motion only, the premise that they did all of the acts alleged by Ryan and that such acts constitute a breach of contract.[6] Defendants did not, however, assume that any damages asserted by Ryan were proximately caused by them. Thus, the question before the court is whether Ryan has produced sufficient admissible evidence of damages from breach of contract proximately caused by Editions to raise a genuine dispute.

        1.    <u>Plaintiff's Declaration</u>

             a.    General Decrease in Business

Ryan declares:

---

[6]The court expresses no opinion as to either whether there is any evidence in the record that the actions alleged occurred or whether such actions constitute a breach of the contract. The Court does, however, note that the contract only mentions paper posters and there is no contract term that relates to giclees, canvas transfers, or wall murals.

1

2          Beginning in about 2004, when I first began seeing canvas transfer of my posters
          being widely offered for sale, my giclee business dropped off steeply.  As a result,
3          I stopped selling giclees directly.  I still sell giclees indirectly through an agent,
          but at a significantly diminished rate.

4    (Ryan Decl. ¶ 11.)  Ryan provides no specifics as to the meaning of "dropped off steeply."

5    Ryan provides no information such as the number of giclees sold in 2003 and in 2004.  In order

6    to show a genuine dispute, Ryan must submit sufficient evidence that a reasonable jury could

7    return a verdict finding that Ryan suffered damage caused by a breach of contract by Editions.

8    Ryan's general and unsupported assertion that her giclee business "dropped off sharply" is not

9    sufficient for a jury to find that she had been damaged.  In the absence of any evidence of any

10   sales of giclees or canvas transfers, Ryan's unsupported assertion of a general decline is not

11   sufficient to create a genuine dispute.

12          Moreover, even if the court were to accept Ryan's assertion of a decline in giclee

13   business as sufficient evidence to survive summary judgment, Ryan would still not prevail

14   because she has offered no evidence that any drop in business was caused by any breach of

15   contract by Editions.  For the purposes of this motion only, the court accepts that Editions

16   breached the contract.  Nonetheless, Ryan must still provide evidence that the breach

17   proximately caused the decline in the giclee business.

18          Ryan argues that she was damaged by Editions' authorization to ArtSelect to produce

19   canvas transfer and giclees of her works.  Ryan, however, has produced no evidence of any sales

20   of giclees and has only produced admissible evidence of only a single canvas transfer.  While

21   Ryan is entitled to all reasonable inferences, it is not reasonable to assume that a single *canvas*

22   *transfer* caused damages in the form of a decrease in *giclee* sales.  Accordingly, a single sale of a

23   canvas transfer does not create a genuine dispute as to the causation of a decline in Ryan's giclee

24   sales.

25          Ryan also argues that "[o]ther retailers" have reported having specific authorization to

26   produce canvas transfers.  The only evidence cited, however are paragraphs 6 and 7 of Ryan's

27   declaration.  The statement of Ms.  Vollmer and the unnamed ArtSelect employee that the Court

28   has already found to be inadmissible hearsay.  Similarly, Ryan argues that "[m]any other retails

have produced canvas transfers of Ms. Ryan's works." (Opp at 7.) Ryan cites again to inadmissible paragraph 6 of her declaration, and to paragraph 10 of her declaration, the statements of unnamed customers which the court has also found to be inadmissible hearsay. Thus, Ryan has provided no admissible evidence of Editions authorizing additional canvas transfers.

Ryan appears to argue that Editions' allegedly permissive policies toward canvas transfers has caused her damage. Ryan argues that Todd Haile, Art Director for Editions, testified that he believed that canvas transfers were "an exposure tool for the artists." (Opp at 6:28.) Ryan asks the court to take this statement as evidence that Editions' stated policy against canvas transfers "was just for show." The assumption that an individual's belief about the value of the canvas transfer process is the company's actual practice towards allowing such transfers is unwarranted.

Ryan also makes a general argument that Editions "Don't ask Don't tell" and "wink and nod" policies were a breach of contract that damaged her. Ryan, however, provides no evidence of either the permissive policies or damage that would flow from them. Ryan argues that "[t]here is evidence that, as a rule, retailers understand that canvas transfers require prior authorization from the copyright owner and check with the publisher (even if not the actual copyright holder) before producing canvas transfers." Ryan cites to the Haile deposition at 118-119, but the deposition transcript does not support her argument. Haile said: "if it is a major purchase that they are going to canvas transfer, they'll tell us and they'll ask permission." (DeLiberty Decl. Exh. F, Haile Depo. Tr. at 118-119.) The next question and answer was:

> Q: What about companies that are offering these things for sale on spec, do those companies come to you first and ask for permission?
>
> A: I don't think – I think they'll ask if they get an order. I think they'll ask if it's important to them.

(Id. at 119:2-7.) Thus, the deposition transcript does not support the argument that retailers always, or even as a rule, check with publishers prior to making canvas transfers.

Even assuming that Haile had said retailers always ask, however, Ryan still cannot prove any damages. Ryan next argues that the Court must assume, absent contrary evidence, that

retailers "complied with their legal obligations" and cites California Civil Code § 3548. (Opp. at 7) Section 3458 provides as a maxim of jurisprudence: "The law has been obeyed." Thus, Ryan argues, any infringing canvas transfers were the result of Editions' permissive policies. The flaw in this argument is obvious: there is no testimony about any legal obligation, only testimony about what Haile thinks is the practice of retailers. Accordingly, there is no basis for the court to assume that every retailer who offers canvas transfers has received permission from Editions to make canvas transfers.[7]

### b.    Hearsay Statement of Unnamed Customer

As described above, the statements in Ryan's declarations that purport to repeat statements made by customers are inadmissible hearsay.[8]

### 2.    Attorney's Fees Cannot Substitute for Damages

Ryan asserts that the contract with Editions provides for attorney's fees and, therefore, her damages are her attorneys fees. The contract states: "In the event that litigation is instituted with regard to this Agreement, the prevailing party shall be entitled to its costs of the suit, including reasonable attorney's fees." (Contract, Jakola Decl. Exh. 1 at ¶ 12.) Ryan argues that if she wins at trial, she will be entitled to attorney's fees. Therefore, according to Ryan, the fees can substitute for damages. This circular argument is not persuasive. In order to prevail on a claim for breach of contract, Ryan must first prove all of the elements of a claim for breach of contract, including damages. If Ryan has no evidence in the record of damages, summary judgment is proper on the breach of contract claim. Ryan cannot use the attorney's fees to which she would be entitled if she prevails to show that she should prevail. *See Childers v. Edwards,*

---

[7]This argument appears in Ryan's Opposition brief under the heading "Plaintiff was damaged by Editions Limited's slander of title and breach of contract, including the covenant of good faith and fair dealing." Thus, the Court assumes that this argument is directed at damages for breach of contract. However, Ryan then argues that she "should be permitted to establish this at trial and recover the revenue earned as a result of Editions Limited's contributory infringement." (Opp. at 7.) To the extent that this argument was directed at damages for infringement, the Court reiterates that Ryan cannot defeat summary judgment on the amount of infringement damages with hopes of finding additional evidence.

[8]If Plaintiff had submitted a declaration from a customer stating that he or she did not buy an original artwork because he or she had purchased a giclee or canvas transfer, that would be evidence of damage. Plaintiff, however, has not submitted any such evidence.

48 Cal.App.4th 1544, 1549 (1996) (awarding defendants fees on negligent misrepresentation claim arising out of contract where plaintiff failed to prove damages). The *Childers* court noted; "Proving liability proves only an element of a cause of action, not the cause of action itself." (rejecting "the fallacy of concluding that a plaintiff who wins on liability but fails to prove damages" is a prevailing party.) *Id.* at 1551.[9]

### 3. There is No Claim for Injunctive Relief for Breach of Contract

At the hearing, Ryan argued that she did not need to show damages because if she wins an injunction, she will be entitled to attorney's fees.[10] As Defendants pointed out in response, Ryan did not seek injunctive relief for her breach of contract claim. The Complaint does seek an injunction, but it only seeks to enjoin Defendants from 1) infringing Plaintiff's copyrights; 2) producing, selling or marketing wallpaper murals or canvas transfer; 3) selling or marketing posters without informing the recipient of the posters that the posters are not authorized for murals or transfers; and 4) selling or marketing the posters when there is reason to suspect the recipient will use the posters for murals or transfers. (Complaint Prayer ¶ 1.) The Complaint seeks damages for breach of contract, but not an injunction to prevent the breach of contract. (Complaint Prayer ¶ 7.) Indeed, the complaint does not allege that the breach of contract will continue unless enjoined and does not allege that such breaches would cause irreparable harm. (Complaint ¶¶ 77-83.)

At the hearing, Ryan asserted "If it's a case that I did not ask for injunctive relief in the breach of contract, I think I should be entitled to amend it to conform to proof because the proof is that I am entitled to it." (Tr. at 48:21-24.) Ryan did not identify under what authority she believes she is entitled to amend her complaint at this late date. The Case Management Conference Order clearly states that the deadline for amending the pleadings in this case was

---

[9] Although the *Childers* court examined a negligent misrepresentation claim, the holding is applicable because both negligent misrepresentation and breach of contract require damages as an element of the cause of action.

[10] While fees are undoubtedly important to Mr. DeLiberty, the availability of fees on other causes of action is not relevant to whether summary judgment should be granted on the breach of contract claim.

sixty days after the entry of that order, or February 6, 2007. (CMC Order, 12/6/06.)

It is possible that Ryan meant to refer to the provision of Rule 15(b) that allows amendment of the pleadings: "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Fed. R. Civ. P. 15(b). This provision, however, is inapplicable for a number of reasons. First, no issues have been tried. Second, Defendants have objected.[11] Third, Ryan has not specified any evidence to which the complaint could be conformed.

Moreover, Rule 15 and its liberal policy of allowing amendment, do not apply once the court has entered a scheduling order. In order to modify the scheduling order, a party must show "good cause for not having amended their complaints before the time specified in the scheduling order expired." *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000); *citing Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992). Ryan has not demonstrated any good cause for failing to amend the complaint within the time provided in the Case Management Order. Additionally, the prejudice to Defendants of amendment this close to trial is obvious. Accordingly, for all of the above reasons, Plaintiff's oral request to amend the pleadings to conform to proof and state a claim for injunctive relief for breach of contract is denied.

## C.    No Evidence of Damages for Slander of Title

California has adopted the definition of slander of title set forth in section 624 of the Restatement of Torts, which provides:

> One who, without a privilege to do so, publishes matter which is untrue and disparaging to another's property in land, chattels or intangible things under such circumstances as would lead a reasonable man to foresee that the conduct of a third person as purchaser or lessee thereof might be determined thereby is liable for pecuniary loss resulting to the other from the impairment of vendibility thus caused.

*Howard v. Schaniel*, 113 Cal.App.3d 256, 263-64 (1980)(quoting Restatement of Torts). "The gravamen of the tort is the damage to the salability of the property." *Seeley v. Seymour*, 190

---

[11]Rule 15 also contains a provision covering objection at trial, but as this case has not yet been tried, this provision is also inapplicable.

Cal.App.3d 844, 858 (1987); see also *Truck Ins. Exchange v. Bennett*, 53 Cal.App.4th 75, 84 (1997), review denied (Jun 18, 1997).

The pecuniary loss for slander of title is restricted to:

(a) the pecuniary loss that results directly and immediately from the effect of the conduct of third persons, including impairment of vendibility or value caused by disparagement, and

(b) the expense of measures reasonably necessary to counteract the publication, including litigation to remove the doubt cast upon vendibility or value by disparagement.

*Appel v. Burman*, 159 Cal.App.3d 1209, 1215 (1984), *quoting* Rest. 3d Torts § 633; *see also Davis v. Wood,* 61 Cal.App.2d 788, 797 (1943). In an action for disparagement of title the plaintiff may recover as damages the expense of legal proceedings necessary to remove a cloud on the plaintiff's title. *Wright v. Rogers*, 172 Cal.App.2d 349, 366 (1959). While attorney's fees are allowed for the fees incurred in clearing title, fees incurred in prosecuting a slander of title action are not. *Contra Costa County Title Co. v. Waloff*, 184 Cal.App.2d 59, 67 (1960) (Where party sought to quiet title and damages for slander of title in single suit, fees allowed only for portion of fees allocated to quieting title and not for portion of fees allocated to slander of title.)[12]

### 1.   There is Evidence of Malice

Defendants argue that the slander of title claim must fail because Ryan must prove malice in order to establish a lack of privilege and there is no evidence of malice. Ryan, however, has produced sufficient evidence that Editions knew or should have known that its statements claiming the right to license her works for canvas treatments were false. *See* (Ryan Decl. ¶3). (Ryan Decl. ¶3). Accordingly, a reasonable jury could find that Editions knew or should have known that she would refuse to license canvas transfer and wall murals.

---

[12]The comment to the Restatement clarifies: "The rule stated in this Clause is primarily applicable to the disparagement of property in land, since in the majority of jurisdictions the person whose land is disparaged by matter of record may bring a bill in equity to remove the cloud cast upon his title by the disparaging publication. The rule, however, is applicable whenever similar relief may be obtained by an action to remove the cloud cast by the publication of disparaging matter upon the title to chattels or intangible things, or upon the quality of land or other things." Accordingly, as used in this Order, the phrase "to quiet title" refers to any action to remove the cloud cast by the disparaging matter. Although Ryan has never specified what actions she has taken that are analogous to quieting title, it appears that actions taken by Ryan to remove Editions' assertions of a right to authorize derivative works would qualify.

### 2.    Evidence of Damages from Slander of Title

For all of the reasons detailed above, Ryan has not submitted evidence that creates a genuine dispute over whether she suffered any damages from slander of title.  Additionally, slander of title requires evidence of direct pecuniary loss.  A general decline in business is not sufficient.  *Mann v. Quality Old Time Service, Inc*., 120 Cal.App.4th 90, 109 (2004) (in context of trade libel).  Thus, even if Ryan had evidence of her purported decline in business, it would not be sufficient to survive summary judgment on the slander of title claim.

### 3.    Attorney's Fees as Damages in Slander of Title

Ryan argues that her attorney's fees can be the damages required to show slander of title.  At the hearing, Ryan argued that "the cost of correcting the slander of title" is part of damages for slander of title.  (Tr. at 13:9-14.)  Ryan is only partially correct:  the law is that fees to quiet title are part of damages, but fees to prosecute a slander of title action are not. *Contra Costa County Title Co. v. Waloff*, 184 Cal.App.2d 59, 67 (1960); *see also Seeley v. Seymour*, 190 Cal.App.3d 844, 865-66 (1987) (fees "incurred merely in pursuit of damages" are not recoverable.)[13]

Although there are few cases on point, the Court interprets California Law to allow fees to quiet title to serve as the sole damages supporting a claim for slander of title.  *See Arthur v. Davis*, 126 Cal.App.3d 684, 691 (1982); *Rest. (2nd) Torts* § 633.  As a matter of public policy, however, this rule cannot be extended to other types of fees.  Fees to quiet title are given special status because the law presumes that it is necessary to clear a cloud on title, while it is optional to seek damages.  Thus, this rule preserves the "American Rule" that each side generally bears the fees incurred in litigation.  Accordingly, the question becomes whether Ryan has submitted

---

[13]In her supplemental brief, Ryan argued that "legal fees are recoverable as damages in a slander of title suit for the same reason they are recoverable in an action for malicious prosecution."  (Supp. Brief at 2.)  Ryan fails to appreciate the distinction between fees to quiet title and fees for damages for slander of title.  In an action for malicious prosecution, fees incurred in the original suit are recoverable, but fees incurred during the malicious prosecution action are not.  *See e.g. Citi-Wide Preferred Couriers, Inc. v. Golden Eagle Ins. Corp*., 114 Cal.App.4th 906, 911-12 (2003)("settled law permits him to recover the cost of defending the *prior action* including reasonable attorney's fees").  Similarly, in an action for slander of title fees incurred to quiet title are recoverable and fees incurred prosecuting the slander of title are not.

sufficient evidence to create a material dispute of fact as to whether she has damages in the form of fees reasonably expended to quiet title.

The Complaint alleges as the Slander of Title that Editions falsely represented that it had the right or authority to produce or distribute wallpaper murals, canvas transfers or other derivative works. (Complaint ¶ 86). The Complaint seeks as damages: "the expense of litigation and other measures to remediate and mitigate the damages caused by the slander of title." (Complaint ¶ 89). As discussed above, damages in the form of attorneys' fees are only available for fees expended to quiet title. To the extent that Ryan seeks attorneys' fees "to remediate and mitigate the damages caused by slander of title," such fees are not available.

This lawsuit was filed in August of 2006. The only evidence in the record of representations made by Editions as to the right to authorize derivative works are the license to ArtSelect to print giclees and the license to Environmental Graphics to produce wall murals. The contract with Editions was cancelled in June of 2005 (Jakola Decl. ¶ 6, Exh. 5; Reeder Decl. ¶ 5). The contract with Environmental Graphics was canceled no later than December of 2005. (Jakola Decl. ¶ 9.) Accordingly, there is no evidence of fees incurred in this litigation for the purpose of anything analogous to quieting title.

Indeed, there is no evidence of any fees incurred by Ryan in any context. Notably lacking in the record is any declaration from Mr. DeLiberty detailing any amount of fees incurred by his client. Ryan does cite to her own declaration at paragraphs two through six to support that she has incurred fees "to correct the results of Editions Limited's promotion of canvas transfers against her express wishes" (Opp. at 7.) First, only fees to quiet title, which in this case would be to remove the claim by Editions that it had the right to license derivative works of Ryan's art, are recoverable. Thus, "fees to correct the results of the slander of title," as opposed to remove the cloud cast by the disparagement, are not recoverable. Second, the Ryan declaration contains no mention of any fees incurred. Third, there is no evidence from which the Court could find that any such fees were reasonably incurred. Thus, there is no evidence that Ryan has incurred any fees for any purpose, no less reasonable fees for a purpose analogous to quieting title.

## V.    CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.   There was only one instance of copyright infringement and the damages for the Copyright Infringement, if proven, are limited to $1.72;

2.   Summary Judgment is granted on the breach of contract claim;

3.   Summary Judgment is granted on the slander of title claim;

4.   No later than January 7, 2008, the parties shall contact Judge Seeborg's chambers to set up a further settlement conference to take place no later than January 31, 2008; and

5.   The Pre-Trial Conference and Trial dates are VACATED and a status conference shall be held at 2:00 pm on January 15, 2008 to reset the trial date.  The parties shall submit a Joint Case Management Conference Statement no later than January 8, 2008.

IT IS SO ORDERED.

Dated: December 27,  2007

_Patricia V. Trumbull_
_____
PATRICIA V. TRUMBULL
United States Magistrate Judge