UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTORIA RYAN,<br><br>           Plaintiff,<br><br>     v.<br><br>EDITIONS LIMITED WEST, INC., et al.,<br><br>           Defendants. | Case No. 5:06-cv-04812-PSG<br><br>**ORDER GRANTING-IN-PART MOTION FOR FEES**<br><br>**(Re: Docket No. 276)** |

  Having traveled to the Ninth Circuit and back multiple times, Plaintiff Victoria Ryan once again seeks attorney's fees and Defendants Editions Limited West, Inc. et al. oppose.[1]  Ryan's motion is GRANTED-IN-PART, and no later than February 2, 2016, ELW shall remit payment to her in the total amount of $349,083.00.

**I.**

  Ryan is an artist, and ELW publishes art posters.[2]  Several years ago, Ryan signed a licensing agreement with ELW to publish two of her paintings as posters.[3]  This agreement had a fee-shifting clause, which provided that "[i]n the event that litigation is instituted with regard to this Agreement, the prevailing party shall be entitled to its costs of the suit, including reasonable attorney's fees."[4]

---

[1] *See* Docket Nos. 276, 279.

[2] *See* Docket No. 268 at 4.

[3] *See* Docket No. 1 at Ex. A.

[4] *See id.* at Ex. A ¶ 12.

1

Case No. 5:06-cv-04812-PSG
ORDER GRANTING-IN-PART MOTION FOR FEES

After their partnership soured, Ryan sued ELW for copyright infringement, unfair competition, breach of contract and slander of title.[5] The court granted ELW summary judgment on each claim and limited damages for copyright infringement to $1.72.[6] Addressing two separate appeals by Ryan, the Ninth Circuit affirmed summary judgment on all claims except copyright infringement, on which it determined that Ryan had raised a triable issue.[7] It also held that if the district court found "ELW liable for contributory or vicarious copyright infringement, it should consider whether Ryan is the prevailing party under the broad language of the contract, and whether she is entitled to a permanent injunction against ELW."[8]

Following remand and a bench trial, the court found in favor of Ryan on the contributory copyright infringement claim and in favor of ELW on the vicarious copyright infringement claim.[9] The court found that Ryan provided no evidence to substantiate a claim for damages or ELW's profits from infringement,[10] but Ryan did secure a permanent injunction. Following the Ninth Circuit's directive, the court further concluded that under the licensing agreement's fee-shifting clause, Ryan was entitled to reasonable attorney's fees and costs incurred in prosecuting only the claim she had prevailed on, for contributory copyright infringement.[11]

Ryan requested $425,439.72 in attorney's fees, costs and interest.[12] The court instructed Ryan to provide a declaration setting forth the fees incurred in prosecuting the contributory

---

[5] *See* Docket No. 1.

[6] *See* Docket No. 105 at 21; Docket No. 142.

[7] *See* Docket No. 180 at 3.

[8] *Id.* at 6.

[9] *See* Docket No. 234.

[10] *See id.* at 7, 13.

[11] *See id.* at 16.

[12] *See* Docket No. 235; Docket no. 242 at 11.

2
Case No. 5:06-cv-04812-PSG
ORDER GRANTING-IN-PART MOTION FOR FEES

copyright infringement claim that she prevailed on, but she did not.[13] The court accordingly excluded the following fees and costs as either moot in light of prior rulings or insufficiently detailed to show that they were specifically related to litigating the contributory copyright infringement claim:

- fees and costs related to Ryan's pre-lawsuit cease and desist efforts ($7,267.31);
- fees and costs related to Ryan's defense of ELW's defamation counterclaim ($82,061.32);
- fees and costs relating to Ryan's first appeal, which resulted in a reversal of summary judgment on the copyright claims ($67,357.74);
- fees and costs relating to Ryan's second appeal, which reversed finding ELW the prevailing party under the licensing agreement ($11,567.98).[14]

This left $256,819.07 in fees relating to pre-trial and trial litigation of all the issues in dispute, which the court reduced as follows:

- 75% reduction because Ryan prevailed on only one of her four claims;
- 20% reduction because Ryan block-billed and improperly claimed interest before the fee amounts were certain and vested.[15]

The court made these reductions because Ryan "failed to follow the court's instruction or otherwise to provide sufficient guidance to determine reasonable attorney's fees and costs related to the prosecution of the contributory copyright infringement claim," such that "the court [was] left to its own devices to fashion an appropriate award."[16] The final award was $51,363.81 in attorney's fees and $7,989.94 in costs.[17]

---

[13] *See* Docket No. 242 at 9.

[14] *See id.*

[15] *See id.* at 10.

[16] *Id.*

[17] *See id.* at 10-11.

The parties then cross-appealed once more to the Ninth Circuit, which held in relevant part that Ryan was entitled to attorney's fees under the licensing agreement[18] but that this court had improperly reduced Ryan's requested fees.[19] The Ninth Circuit held that the court had erred in excluding fees relating to Ryan's pre-litigation cease and desist efforts and fees relating to Ryan's first appeal, as this work was "plainly related to the eventual prosecution of her infringement claim."[20] The Ninth Circuit directed the court to "consider the interrelated nature of the claims" in Ryan's case and "provide more detailed explanation" for any reductions if the court decided to reduce the requested fees "to comport with Ryan's limited success" on remand.[21] The Ninth Circuit declined to provide any "precise formula or methodology" for determining which hours were "clearly unrelated" to the copyright infringement claim or excessive.[22]

The Ninth Circuit also held that the 75% reduction was error, because "[p]ro rata apportionment is particularly ineffective . . . where the various claims asserted involve a common set of facts and issues."[23] On remand, the court must use "an adequate [reduction] method" that balances Ryan's prevailing party status with her "limited success in the litigation as a whole."[24]

Finally, the Ninth Circuit held that the 20% reduction for block-billing was error, because the court did not explain how it selected the 20% rate, and not all entries were block-billed.[25] On remand, the court may reduce fees for block billing and improperly claimed interest, but must

---

[18] *See* Docket No. 268 at 8-14

[19] *See id.* at 8-21.

[20] *Id.* at 18.

[21] *Id.* at 19.

[22] *Id.*

[23] *Id.*

[24] *Id.* at 20.

[25] *See id.*

4
Case No. 5:06-cv-04812-PSG
ORDER GRANTING-IN-PART MOTION FOR FEES

1  explain how the reduction balances the hours that were block-billed and how it determined the
2  percent reduction to apply.[26]

3  Ryan now requests a total fee award of $1,048,444.13.[27] She calculates this amount as
4  follows: ($335,170.00 total principal + $189,052.07 interest) x 2.0 fee enhancement multiplier.[28]

## II.

6  This court has subject matter jurisdiction and supplemental jurisdiction pursuant to 28
7  U.S.C. §§ 1331, 1338 and 1367. The parties further consented to the jurisdiction of the
8  undersigned magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).[29]

9  "Plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they
10 succeed on any significant issue in litigation which achieves some of the benefit the parties sought
11 in bringing suit."[30] The court must then determine what attorney's fee is "reasonable."[31]

12 In determining what is a reasonable fee, the court first "establishes a lodestar by
13 multiplying the number of hours reasonably expended on the litigation by a reasonable hourly
14 rate."[32] The resulting figure is presumptively reasonable.[33] The party seeking fees bears the
15 burden of documenting the hours expended in the litigation and must submit evidence supporting
16 the hours and rates claimed.[34] In determining the appropriate lodestar, the court may exclude

---

[26] *See id.* at 21.

[27] *See* Docket No. 276 at 2.

[28] *See id.*

[29] *See* Docket Nos. 5, 23.

[30] *Hensley v. Eckerhart*, 461 U.S. at 433 (*quoting Nadeau v. Helgemoe*, 581 F.2d 275, 278-79 (1st Cir. 1978).

[31] *Hensley*, 461 U.S. at 433

[32] *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 (2007).

[33] *See Hensley*, 461 U.S. at 434.

[34] *See Hensley*, 461 U.S. at 433.

hours that are "excessive, redundant, or otherwise unnecessary."[35]  The court must also determine a reasonable hourly rate, considering "certain factors, including the novelty and difficulty of the issues, the skill required to try the case, whether or not the fee is contingent, [and] the experience held by counsel and fee awards in similar cases."[36]  When determining the rate, the court may also consider whether there has been a delay in payment.[37]  "District courts have the discretion to compensate plaintiff's attorneys for a delay in payment by either applying the attorneys' current rates to all hours billed during the course of the litigation or using the attorney's historical rates and adding a prime rate enhancement."[38]

The court may then adjust the lodestar to account for block billing[39] or to reflect a party's limited degree of success.[40]  In particular, where a plaintiff is deemed "prevailing" even though she succeeded on only some of her claims for relief, the court must consider (1) whether the plaintiff failed to prevail on claims that were unrelated to the claims on which she succeeded and (2) whether the plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for the fee award.[41]  As to the second prong, "a district court 'should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.'"[42]

---

[35] *Id*. at 434.

[36] *Moreno v. City of Sacramento*, 534 F.3d 1106, 1114 (9th Cir. 2008).

[37] *See id.* at 947.

[38] *Id.*

[39] *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007).

[40] *See Hensley*, 461 U.S. at 436-37.

[41] *See Hensley*, 461 U.S. at 434.

[42] *Id*. at 436 (explaining that "[i]f the plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation times a reasonable hourly rate may be [excessive] . . . even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith").

Finally, California law offers the court discretion to adjust the lodestar to "include a fee enhancement for the purpose, e.g., of compensating the attorney who agreed to undertake such representation at the risk of nonpayment or delayed payment, in an amount approaching the market rate for comparable legal services."[43]  The court is "not *required* to include a fee enhancement . . . for contingent risk, exceptional skill, or other factors," however, and the burden of proof is on the party seeking the enhancement.[44]  The court should consider whether the attorney has been able to mitigate the risk of nonpayment and the degree to which the relevant market rate compensates for contingency risk, extraordinary skill, or other factors.[45]  The court should "not consider these factors to the extent they are already encompassed within the lodestar. . . . Otherwise, the fee award will result in unfair double counting and be unreasonable."[46]

### III.

Applying the above standards, Ryan's motion for fees is GRANTED-IN-PART.

*First*, the court must determine the reasonable hours for the lodestar calculation. According to billing records from Ryan's counsel, Mr. Richard De Liberty, he spent 1,166.70 hours on this case,[47] plus 8.5 hours on his earlier fee declaration[48] and 22.2 hours on this motion and other work incurred after filing a fee motion with the Ninth Circuit.[49]  Of the 1,166.70 hours, 200.02 were incurred in connection with the anti-SLAPP motion,[50] and the court already

---

[43] *Ketchum v. Moses*, 24 Cal. 4th 1122, 1136 (2001).

[44] *Id.* at 1138 (emphasis original).

[45] *See id.*

[46] *Id.* at 1138-39.

[47] *See* Docket No. 276-2 at 16.

[48] *See* Docket No. 276-1 at ¶ 10.

[49] *See id.* at ¶ 12.

[50] The court applied the following equation to each time entry that listed fees for "Anti-SLAPP Motion" and took the sum of the results to calculate the total hours spent on the anti-SLAPP motion: Anti-SLAPP Motion fees / Total fees * Hrs = hours spent on anti-SLAPP Motion.  *See*

7
Case No. 5:06-cv-04812-PSG
ORDER GRANTING-IN-PART MOTION FOR FEES

addressed the fees for those hours in a previous order.[51] De Liberty also claims 20.0 hours that he "anticipate[s] incurring" in responding to ELW's motion for a stay and filing the reply brief for this fee motion.[52] The court finds that fees are recoverable for the 1,166.70 hours, the 8.5 hours and the 22.2 hours, minus the 200.02 hours, for a total of 997.38 hours. These hours were reasonably expended in the litigation and Ryan submitted evidence, namely De Liberty's historical billing records, to support the hours claimed. The 20.0 hours are not recoverable, however, because they are not supported by billing records and are merely an estimate of time that may be incurred. If Ryan wishes to recover fees for these hours, she must file a supplemental declaration with evidence of the hours actually incurred.

ELW argues that the court should limit Ryan's attorney's fees to only the fees that were incurred in connection with the contributory copyright infringement claim that she prevailed on.[53] In ELW's view, the hours spent on the breach of contract, slander of title and anti-SLAPP claims were unrelated and should be stricken. However, the Ninth Circuit specifically admonished this court to eliminate only hours that are "clearly unrelated" to the contributory copyright infringement claim,[54] and after examining the billing records, the court is unable to identify any billing entry that meets this exacting standard. As discussed in the court's previous order on fees, while Ryan failed to provide either a declaration or billing records "setting forth the particular attorney's fees incurred in prosecuting the claim for contributory copyright infringement,"[55] ELW also failed to object to any specific billing entries or identify a method for reducing the hours that

---

Docket No. 276-2.

[51] See Docket No. 193 at 7-9.

[52] Id. at ¶ 13.

[53] See Docket No. 297 at 7-8.

[54] See Docket No. 268 at 19.

[55] Docket No. 242 at 9.

8
Case No. 5:06-cv-04812-PSG
ORDER GRANTING-IN-PART MOTION FOR FEES

would be consistent with the Ninth Circuit's order.[56] This leaves the court with no choice but to follow the Ninth Circuit's other admonition in its previous order to "[b]y and large . . . defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case."[57]

***Second***, the court must determine the reasonable hourly rate for the lodestar. An important factor in this case is the delay that Ryan experienced in receiving payment. The court finds that the appropriate method for compensating Ryan for the delay is to apply De Liberty's current rate of $350 to the 997.38 hours reasonably billed in this litigation.[58] In his solo practice, De Liberty currently bills $350 per hour.[59] He also works with a San Francisco law firm, which bills $450 per hour for De Liberty's work.[60] De Liberty represents Ryan in this case as part of his solo practice, and so his solo rate is appropriate. In fact, this is the rate he used in calculating fees for his most recent work in this case.[61] A reasonable hourly rate of $350/hr x 997.38 hours results in a lodestar of $349,083.00.

Ryan argues that rather than De Liberty's current billing rate, the court should use "an actual interest calculation,"[62] citing *Theme Promotions, Inc. v. News America Mktg. FSI, Inc.*,[63] on the order of 10%.[64] But the court in *Theme Promotions* enhanced the attorney's hourly rate by the

---

[56] *See* Docket No. 279 at 4-8.

[57] *Moreno*, 534 F.3d at 1112.

[58] *See* Docket No. 276-1 at ¶ 12.

[59] *See id.*

[60] *See id.*

[61] *See* Docket No. 276-4.

[62] *See* Docket No. 276 at 2-3.

[63] 731 F. Supp. 2d 937, 949 (N.D. Cal. 2010).

[64] *See* Docket No. 282 at 5.

9
Case No. 5:06-cv-04812-PSG
ORDER GRANTING-IN-PART MOTION FOR FEES

U.S. prime rate interest factor, compounded on an annual basis,[65] not any old number plucked at random from the sky.  During the lifetime of Ryan's case, the monthly U.S. prime rate ranged from 3.25% to 8.25%; on the day that judgment entered, it was 3.25%.[66]  It certainly was never 10%.[67]  While Ninth Circuit precedent permits the discretionary use of the prime rate to compensate for delays in payment, it does not allow for arbitrarily selected interest rates.[68]

Moreover, Ryan fails to explain how she selected the 10% interest rate; how this court should determine the correct prime rate to use in a prime rate enhancement calculation; or from what date the enhancement should be applied.  All this militates against the use of the prime rate enhancement method of compensating for delay in payment.  Although the prime rate may "more accurately account[] for the time value of money over a long period of delay,"[69] the Ninth Circuit has held that the choice between using the current hourly rate or the prime rate enhancement is within the district court's discretion.[70]

***Third***, the court declines to adjust the lodestar.  ELW argues that under *Hensley*, the court must consider Ryan's limited success and reduce her fees accordingly.  The court acknowledges that Ryan succeeded to a limited degree; although she won a permanent injunction, she suffered summary judgment on three of her four claims.  It is difficult to say that this is a level of success that makes the hours reasonably expended a satisfactory basis for the fee award.  However, ELW

---

[65] *See Theme Promotions*, 731 F. Supp. 2d at 951, App. Table H.

[66] *See* Historical Data: Bank Prime Loan: Monthly, Board of Governors of the Federal Reserve System, *available at* http://www.federalreserve.gov/datadownload/Output.aspx?rel=H15&series=6fa2b8138e0eafe0ad6cde24ba2307f5&lastObs=&from=&to=&filetype=csv&label=include&layout=seriescolumn (last updated Dec. 2015).

[67] The U.S. prime rate last reached 10% in December 1990, *see id.*

[68] *See Welch*, 480 F.3d at 947.

[69] *Theme Promotions*, 731 F. Supp. 2d at 951.

[70] *See Welch*, 480 F.3d at 947.

suggests no method for reducing the lodestar that would be consistent with the Ninth Circuit's mandate in this case, given the interrelated nature of Ryan's claims.

*Fourth*, the court declines to apply the "modest" 2x fee multiplier Ryan requests.[71] *Ketchum* authorized multipliers specifically in anti-SLAPP cases taken on contingency "to bring the financial incentives for attorneys enforcing important constitutional rights, such as those protected under the anti-SLAPP provision, into line with incentives they have to undertake claims for which they are paid on a fee-for-services basis."[72] There is no basis for a multiplier here: Ryan already received fees for her anti-SLAPP motion,[73] and her case does not involve enforcement of constitutional rights.

Furthermore, the use of a fee multiplier is discretionary rather than mandatory, and Ryan fails to satisfy the burden of proof, which rests on her.[74] She argues that the multiplier is necessary to compensate De Liberty for the risk he ran of nonpayment in this contingency case.[75] Under *Ketchum*, however, that is only one factor in the court's consideration, and the court finds that the reasonable hourly rate it applied already compensates De Liberty for his risk of nonpayment. Using a multiplier thus would result in unfair double compensation. Notably, Ryan did not request a multiplier in either her motion for anti-SLAPP fees[76] or her last fee request;[77] that the case was on contingency apparently did not justify a multiplier then, and Ryan fails to explain to the court what changed circumstances warrant a multiplier now.

---

[71] Docket No. 276 at 3.

[72] *Ketchum*, 24 Cal. 4th at 1132.

[73] *See* Docket No. 193 at 7-9.

[74] *Ketchum*, 24 Cal. 4th at 1138.

[75] *See* Docket No. 276 at 3.

[76] *See* Docket No. 185.

[77] *See* Docket No. 235.

11
Case No. 5:06-cv-04812-PSG
ORDER GRANTING-IN-PART MOTION FOR FEES

1  **SO ORDERED.**

2  Dated: January 19, 2016

3  　　　　　　　　　　　　　　　　　　　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
   　　　　　　　　　　　　　　　　　　　PAUL S. GREWAL
4  　　　　　　　　　　　　　　　　　　　United States Magistrate Judge