UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VICTORIA RYAN,<br><br>    Plaintiff,<br><br>v.<br><br>EDITIONS LIMITED WEST, INC., et al.,<br><br>    Defendants. | Case No. 5:06-cv-04812-PSG<br><br>**ORDER DENYING DEFENDANT'S MOTION TO ENFORCE SETTLEMENT AGREEMENT AND TO QUASH PLAINTIFF'S REQUEST FOR ADDITIONAL ATTORNEY'S FEES**<br><br>Re: Dkt. No. 308 |

Though this action for copyright infringement has reached the ten year mark and has been through more than one set of appellate proceedings, the parties involved in it still cannot seem to end the litigation. As this court sees it, all that remains to be done is the payment of fees. Yet presently before the court is a motion filed by Defendant Editions Limited West, Inc. ("ELW") seeking an order enforcing an alleged settlement agreement and quashing Plaintiff Victoria Ryan's ("Plaintiff") requests for additional attorney's fees. Dkt. No. 308.

This matter is suitable for decision without oral argument pursuant to Civil Local Rule 7-1(b). Having carefully reviewed the docket and the papers filed by both parties,[1] the court finds no basis for the relief requested by ELW. Accordingly, this motion - hopefully the last one filed in this case - will be denied for the reasons explained below.

**I.  BACKGROUND**

Although the undersigned did not preside over this action and was not previously familiar

---

[1] The court has not considered the reply filed by ELW on September 22, 2016 (Dkt. No. 316), however, because that document is seriously untimely. See Civ. L.R. 7-3(c) ("The reply to an opposition must be filed and served not more than 7 days after the opposition was due.").

1
Case No.: 5:06-cv-04812-PSG
ORDER DENYING DEFENDANT'S MOTION TO ENFORCE SETTLEMENT AGREEMENT AND TO QUASH PLAINTIFF'S REQUEST FOR ADDITIONAL ATTORNEY'S FEES

with it, the docket reveals its long history in this court. Plaintiff is the author of several artworks in "pastel on paper." In a Complaint filed in 2006, Plaintiff alleged that seven defendants, all of whom are art producers and distributors, engaged in the unauthorized reproduction of her artworks for wallpaper murals and canvas transfers. She asserted a claim for copyright infringement against all of the defendants, and claims for unfair competition, breach of contract, and slander of title against one defendant, ELW. For its part, ELW counterclaimed against Plaintiff for slander.

Plaintiff moved to dismiss the counterclaim under California Civil Code § 425.16 as a Strategic Lawsuit Against Public Participation ("SLAPP"). Magistrate Judge Patricia V. Trumbull denied that motion to permit further discovery, issued a series of summary judgment orders in favor of ELW, and entered judgment in 2009. Plaintiff appealed from the judgment.

In 2011, the Ninth Circuit Court of Appeals affirmed the judgment against Plaintiff on the breach of contract, unfair competition, and slander of title claims, and affirmed the denial of Plaintiff's anti-SLAPP motion. The Ninth Circuit reversed the judgment as to the claim for copyright infringement and reversed an order denying Plaintiff's request for a permanent injunction.

Back before the district court, Plaintiff renewed the SLAPP motion on ELW's slander counterclaim, noting that ELW had essentially conceded it should be dismissed. Magistrate Judge Paul S. Grewal granted the motion in part, struck the counterclaim, and awarded Plaintiff $10,794.05 in attorney's fees and costs.

In 2012, Plaintiff's copyright infringement claim and request for contractual attorney's fees and costs was tried to the court over two days. On July 2, 2012, the district court filed its findings of fact and conclusions of law in which it found ELW liable for contributory infringement, found that Plaintiff should receive an award of attorney's fees and costs subject to proof for prosecuting that claim, and determined that Plaintiff was entitled to a permanent injunction. A judgment for Plaintiff was thereafter filed on September 10, 2012. On December 18, 2012, the district court filed an order awarding Plaintiff $59,353.75 in attorney's fees and costs. Both parties then

2
Case No.: 5:06-cv-04812-PSG
ORDER DENYING DEFENDANT'S MOTION TO ENFORCE SETTLEMENT AGREEMENT
AND TO QUASH PLAINTIFF'S REQUEST FOR ADDITIONAL ATTORNEY'S FEES

appealed from the judgment and attorney's fees order.

In 2015, the Ninth Circuit affirmed the judgment insofar as the district court had determined that Plaintiff was entitled to contractual attorney's fees. However, the Ninth Circuit reversed the amount of fees and costs awarded because the district court did not provide an adequate explanation for its calculations.

Revisiting the fees and costs calculation post-mandate, Judge Grewal awarded Plaintiff $349,083.00 in an order filed on January 19, 2016. Plaintiff then moved to enforce the fee award against the bond that ELW had posted in conjunction with the prior appeal. The district court granted that motion as unopposed on February 24, 2016, and ordered ELW to appear for a judgment debtor examination on March 15, 2016.

On March 14, 2016, the parties stipulated to continue the examination. Plaintiff withdrew her request to conduct the examination on April 20, 2016.

Though neither party appealed from the district court's recalculated fee and cost award, the appellate proceedings did not end there because still pending before the Ninth Circuit was Plaintiff's motion for attorney's fees on appeal. The Ninth Circuit granted that motion and referred the matter to the Appellate Commissioner for a determination of the appropriate amount of fees. On April 28, 2016, the Appellate Commissioner filed an order amending the prior mandate and awarding Plaintiff $66,850.00 in attorney's fees. The instant motion followed on May 23, 2016, and was referred to the undersigned as a general duty matter upon the departure of Judge Grewal.

**II.   LEGAL STANDARD**

"It is well settled that a district court has the equitable power to enforce summarily an agreement to settle a case pending before it." Callie v. Near, 829 F.2d 888, 890 (9th Cir. 1987). However, an agreement must meet two requirements before it can be enforced. First, the agreement must be complete. Id. Second, both parties must have agreed to the terms of the settlement. Hatami v. Kia Motors Am., Inc., No. 08-226, 2011 U.S. Dist. LEXIS 43428, at *3,

3

Case No.: 5:06-cv-04812-PSG
ORDER DENYING DEFENDANT'S MOTION TO ENFORCE SETTLEMENT AGREEMENT AND TO QUASH PLAINTIFF'S REQUEST FOR ADDITIONAL ATTORNEY'S FEES

2011 WL 1456192 (C.D. Cal. Apr. 14, 2011).

The district court's decision to enforce a settlement agreement is a discretionary one. See Wilcox v. Arpaio, 753 F.3d 872, 875 (9th Cir. 2014).

**III.   DISCUSSION**

ELW seeks enforcement of a purported settlement agreement arising from an email exchange between the parties' respective counsel. Thus, the central issue raised by this motion is whether or not an agreement to settle was created through these emails. This issue is governed by California contract law. See Jeff D. v. Andrus, 899 F.2d 753, 759 (9th Cir. 1989) ("The construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts generally."); see also Weddington Prods., Inc. v. Flick, 60 Cal. App. 4th 793, 810 (1998) ("A settlement agreement is a contract, and the legal principles which apply to contracts generally apply to settlement contracts.").

The elements essential to the formation and existence of a contract are: (1) parties capable of contracting, (2) the consent of those parties, (3) a lawful object, and (4) a sufficient cause or consideration. Cal. Civ. Code § 1550. For the second factor to be satisfied, the consent must be free, mutual, and communicated from each of the contracting parties to the other. Cal. Civ. Code § 1565. "Consent is not mutual, unless the parties all agree upon the same thing in the same sense." Cal. Civ. Code § 1580.

The lens by which mutual consent is examined is objective rather than subjective; "the test being what the outward manifestations of consent would lead a reasonable person to believe." Weddington Prods., 60 Cal. App. 4th at 811. "If there is no evidence establishing a manifestation of assent to the 'same thing' by both parties, then there is no mutual consent to contract and no contract formation." Id.

To show that Plaintiff consented to an agreement to settle, ELW relies primarily on an email dated March 18, 2016, sent from Plaintiff's attorney Richard De Liberty to ELW's attorney Chris Kuhner at 4:30 p.m. stating, in relevant part: "We already have an agreement. Once we

4
Case No.: 5:06-cv-04812-PSG
ORDER DENYING DEFENDANT'S MOTION TO ENFORCE SETTLEMENT AGREEMENT AND TO QUASH PLAINTIFF'S REQUEST FOR ADDITIONAL ATTORNEY'S FEES

receive payment, we will file an appropriate acknowledgment of satisfaction with the court within 14 days." Decl. of Chris Kuhner, Dkt. No. 309, at Ex. A. De Liberty also stated in that same email: "The time for settlements or releases – and certainly for section 1542 waivers – has long passed. My client will not sign such a document." Id.

The 4:30 p.m. email was only the last of many emails between counsel, however. Prior to that message, De Liberty and Kuhner had engaged in an email conversation that started on March 15, 2016, regarding a check to be sent from ELW to De Liberty. At 1:07 p.m. on March 15th, Kuhner informed De Liberty that ELW required his social security number in order to issue the check, and requested that De Liberty send the information to another email account. Id. Then, at 11:22 a.m. on March 18th, De Liberty asked about the check: "Do you know if this went out? I've been out a couple days, and wondered it if was worth going in today to check on it." Id. Kuhner responded at 11:30 a.m., mentioning a settlement agreement for the first time during the exchange: "Not yet. We are putting finishing touches on a settlement agreement." Id. De Liberty then wrote at 11:38 a.m.: "Not sure why that's necessary given the terms we have already agreed. I assume you're talking a memorialization of those terms. Will I see this today?" Id. Kuhner wrote back at 11:39 a.m.: "Yes with a release upon payment. Hope to get it to you today," to which De Liberty stated one minute later: "Release of what?" Id. Kuhner clarified at 11:45 a.m. that the release was for "[t]he claim for fees. It is being paid in full but client should be given a release." Id.

Importantly, De Liberty responded to Kuhner's clarification at 12:01 p.m. with the following email:

> Let's see what you've written.
>
> I stated clearly, and you confirmed, that this was without prejudice to a bill of costs or further amounts ordered by the court of appeals or district court. And no release was discussed.
>
> I'm glad to confirm satisfaction of the principal fee award.
>
> Incidentally, the bond money did come Tuesday and the levy money did come yesterday.

Id.

5
Case No.: 5:06-cv-04812-PSG
ORDER DENYING DEFENDANT'S MOTION TO ENFORCE SETTLEMENT AGREEMENT AND TO QUASH PLAINTIFF'S REQUEST FOR ADDITIONAL ATTORNEY'S FEES

Kuhner then wrote at 12:02 p.m.: "Understood, but if the amount including any cost bill is paid, the client needs a release from your client - what is the issue?" Id. De Liberty responded at 12:37 p.m.: "As I said, let's see what you've written." Id.

At 2:18 p.m., Kuhner sent another email to De Liberty, apparently with the proposed agreement attached and asking for De Liberty's thoughts. Id. De Liberty's 4:30 p.m. email was sent in response to that communication.

ELW argues based on this exchange that Plaintiff agreed to accept the payment discussed by Kuhner and De Liberty as full satisfaction of the judgment. In other words, ELW believes an agreement to settle all outstanding issues was reached, such that Plaintiff cannot now collect the fees awarded to her by the Ninth Circuit on April 28, 2016. Indeed, as ELW puts it, "[t]he attempt by the Plaintiff to assert additional fee issued by the Ninth Circuit, which he knew about at the time he[2] agreed to the terms of the March 18th Email, is a breach of the settlement agreement." And based on that opinion, ELW requests the court "declare the Fee Order satisfied in full, compel the Plaintiff to file a Satisfaction of Judgment within 10 days, and order the return of any funds paid in excess . . . ."

The problem with ELW's argument is, or course, that the evidence it relies on plainly shows that a contract to settle all outstanding fees issues was never created. Looking at the attorneys' emails objectively as the standard for mutual consent requires, it is apparent that De Liberty's reference to "an agreement" and the filing of an acknowledgement of satisfaction was made in reference to the $349,083.00 in fees and costs awarded by the district court on January 19, 2016, and nothing else.

The complete email discussion between Kuhner and De Liberty is telling of this fact. Prior to that statement, Kuhner and De Liberty had been discussing the check from ELW that was expected to complete payment of the amount of fees still due under the January 19th order, after

---

[2] The "he" must be in reference to De Liberty because there is no indication that Plaintiff herself was involved in the attorneys' email exchange.

6
Case No.: 5:06-cv-04812-PSG
ORDER DENYING DEFENDANT'S MOTION TO ENFORCE SETTLEMENT AGREEMENT AND TO QUASH PLAINTIFF'S REQUEST FOR ADDITIONAL ATTORNEY'S FEES

accounting for levies and the appellate bond relinquished to Plaintiff. When Kuhner raised ELW's request for a release or acknowledgement of satisfaction along with the payment, De Liberty explicitly declined - twice - to entertain the request if it meant that any other then-pending potential entitlement to fees would be waived by Plaintiff. First, at 12:01 p.m., De Liberty unequivocally stated that the payment was "without prejudice to a bill of costs or further amounts ordered by the court of appeals or district court," and that "no release was discussed." He also clarified that, if anything, Plaintiff would "confirm satisfaction of the principal fee award," which is an obvious reference to the fees awarded on January 19th. Then, at 4:30 p.m., De Liberty reiterated that "[t]he time for settlements or releases . . . [had] long passed," and informed Kuhner that Plaintiff would not sign any such document.

Furthermore, the circumstances surrounding this discussion emphasize that the agreement referenced by De Liberty in the March 18th email applied only the fees due under the January 19th order. By that time, Plaintiff had already calendared a judgment debtor examination of ELW, and the parties stipulated to continue the matter only one day prior to the first email between Kuhner and De Liberty referencing the upcoming payment to satisfy the January 19th fee award. Once the payment was actually received, Plaintiff withdrew the request for the judgment debtor examination. Placing counsels' email exchange in the context of this action's corresponding procedural posture, it becomes apparent what De Liberty meant in the March 18th email: that Plaintiff agreed not to pursue the examination if ELW agreed to make the payment.

Based on the evidence presented, a reasonable person could not find that Plaintiff consented to the terms advocated by ELW. Thus, the court finds the parties did not assent to the "same thing" through the emails of their attorneys, at least as to subsequent fee awards, and no settlement agreement on that subject was formed as a result. See Weddington Prods., 60 Cal. App. 4th at 811.

Consequently, there is nothing for the court to enforce and no basis for the relief ELW has requested. See Hatami, 2011 U.S. Dist. LEXIS 43428, at *3. Its motion must therefore be denied.

7
Case No.: 5:06-cv-04812-PSG
ORDER DENYING DEFENDANT'S MOTION TO ENFORCE SETTLEMENT AGREEMENT AND TO QUASH PLAINTIFF'S REQUEST FOR ADDITIONAL ATTORNEY'S FEES

**IV.  ORDER**

Based on the foregoing, the Motion to Enforce Settlement Agreement and to Quash Plaintiff's Request for Additional Attorney's Fees (Dkt. No. 308) is DENIED.

The hearing scheduled for September 29, 2016, is VACATED.

**IT IS SO ORDERED.**

Dated: September 23, 2016


EDWARD J. DAVILA
United States District Judge

8
Case No.: 5:06-cv-04812-PSG
ORDER DENYING DEFENDANT'S MOTION TO ENFORCE SETTLEMENT AGREEMENT AND TO QUASH PLAINTIFF'S REQUEST FOR ADDITIONAL ATTORNEY'S FEES